### In re STOLPER.

No. 308.   Sept. 26, 1939.

Rehearing Denied Oct. 17, 1939.

J. H. Stolper, pro se.

Coleman H. Hayes and V. P. Crowe, for the State Bar of Oklahoma.

HURST, J. The Board of Governors of the State Bar have recommended that J. H. Stolper be disbarred. He was charged, among other things, with having been convicted and sentenced upon a plea of guilty to the crime of charging and receiving a fee greater than that allowed by federal statute for services rendered in connection with the recovery of war risk insurance. He served a term of one year and one

day for this offense in the federal reformatory. It is contended by the board that, although the violation of the federal statute is a misdemeanor, nevertheless the circumstances under which the excessive fee was charged and received rendered the offense an act involving moral turpitude justifying disbarment.

At the hearing before the board, the conviction and sentence were established and evidence was introduced disclosing the circumstances surrounding the conviction. Briefly, the evidence supports these facts: The mother of a war veteran was the beneficiary of a policy of war risk insurance, and in September, 1932, was introduced to Stolper by a man named Yoes, who is not a lawyer. The beneficiary at that time was about 65 years of age and unable to read or write. Stolper, who lives at Muskogee, was introduced as "a man from Washington." At this meeting he prepared, and caused the beneficiary to sign by mark, a letter to the Administrator of Veteran Affairs in Washington, D. C., requesting all letters and checks pertaining to the policy to be sent to Stolper at Muskogee. On March 8, 1933, a check in the sum of $6,785, payable to the beneficiary, was mailed from Washington, D. C., to Stolper. It was established that in the ordinary course of mail the check should arrive in Muskogee on March 10th. Another check for $57.50 was sent to Stolper on March 14th, which he should have received on March 16th. On March 15th, about five days after the principal check would have been received by Stolper in the ordinary course of mail, he met the beneficiary and told her that she was in danger of losing her insurance inasmuch as Congress was about to repeal the law by virtue of which it was payable. He then prevailed upon her to sign by mark, and deliver to himself, a contract (now lost) by which he was to receive one-half of all money realized on the claim. On March 23, 1933, the same day that the beneficiary received a letter from her Congressman advising that Stolper had the checks, he called the beneficiary to his office and they proceeded to the bank where one-half the amount was given to the beneficiary in the form of a certified check and the other half taken out in cash and retained by Stolper.

The federal statute provides that $10 is the maximum fee that may be charged for services in connection with noncontested war risk insurance cases, such as this was. Yoes and Stolper were both indicted in federal court on a charge of violating this statute. After the government had rested and Yoes had testified, Stolper changed his original plea of not guilty to a plea of guilty, and the sentence above referred to was imposed.

Stolper has much to say in his briefs and pleadings in his defense, but produced practically no evidence. He did not testify for himself either at the criminal trial or at the proceedings before the Board of Governors. He attached several purported copies of affidavits to his pleadings, indicating that he was "framed," but introduced none in evidence. He contends principally that the checks sent from Washington were delayed in the mail so that he did not have them in his possession at the meeting with the beneficiary where the alleged attorney's fee contract was entered into. He relies upon a purported letter from the assistant postmaster at Muskogee, attached as an exhibit to his pleading, indicating that the checks were delayed in the mail. But this letter was not introduced in evidence and there is no testimony at all regarding it in the record. The only evidence in the least manner touching upon the subject is the statement of postal authorities, elicited on cross-examination, that sometimes there are delays in the mail.

Stolper denies the execution of the attorney's fee contract, contends that he received no part of the money, except reimbursement for expenses, and that he advised Yoes (who he says received the money) against taking it until Yoes told him the law limiting the maximum fee had been repealed. In these latter contentions he is supported by the testimony of Yoes taken at the criminal trial, and introduced by transcript at the hearing before the Board of Governors.

We have given due consideration to this testimony, but are of the opinion that the evidence here shows that the misdemeanor in question was committed under such circumstances as to render it an act involving moral turpitude such as justifies disbarment. Although several witnesses testified that Stolper's reputation prior to this incident was good, nevertheless he was at the time a man of mature years and had considerable experience in handling war risk insurance cases, and we cannot condone his conduct in this matter, which he failed to refute by subtantial evidence, because of the reputation he previously enjoyed.

We do not think it necessary to discuss another charge against Stolper upon which

the board recommended suspension for one year.

It is ordered that respondent, J. H. Stolper, be, and he is hereby, disbarred from the practice of law in this state.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, OSBORN, CORN, and DAVISON, JJ., concur. GIBSON and DANNER, JJ., absent.