2006 OK 75

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Tony Ray BURNS, Respondent.**

**OBAD No. 1679.**
**SCBD No. 5144.**

Supreme Court of Oklahoma.

Oct. 10, 2006.

Dan Murdock, General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

C.W. Bill Morgan, Anadarko, OK, for Respondent.

EDMONDSON, J.

¶ 1 In this proceeding against a lawyer for imposition of professional discipline we are asked to decide whether six months suspension from the practice of law together with two years supervised probation and assessment of costs is the appropriate disciplinary sanction for this respondent's professional misconduct. We find that it is and we adopt the recommendation of the Professional Responsibility Tribunal, (PRT).

## I.

¶ 2 On December 16, 2005, the Oklahoma Bar Association, (complainant), filed a complaint pursuant to Rule 6 of the Rules Governing Disciplinary Proceedings, (RGDP), 5 O.S.2001, ch. 1, app. 3–A, against Tony Ray Burns, (respondent), a licensed attorney, alleging violations of the RGDP and the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2001, ch. 1, app. 3–A, in two counts setting forth multiple violations of the criminal law of Oklahoma prohibiting driving a motor vehicle while intoxicated or under the influence of alcohol. The complaint alleged these criminal acts demonstrate respondent's

indifference to legal obligations, reflect adversely on the Bar, constitute a violation of the mandatory provisions of Rule 8.4, (a) and (b), ORPC, and Rule 1.3, RGDP, and warrant the imposition of professional discipline.

¶ 3 On January 24, 2006, the PRT held a hearing to consider the charges. It heard the testimony of Mr. Burns and received evidence by exhibits. It also admitted into evidence the parties' stipulations of fact and agreed conclusions of law, and their agreed recommendation that public censure, two years probation under conditions and payment of costs would be appropriate discipline. Respondent stipulated that his conduct did violate the Rules as alleged, admitted that he had abused alcohol and was an alcoholic, and asked that certain mitigating circumstances be taken into account in the determination of his discipline.

¶ 4 Respondent stipulated to the following facts alleged by complainant in Count I of the complaint. On January 17, 2005, he was arrested in Caddo County for the crime of driving a motor vehicle while under the influence of alcohol, and was charged with a felony; and on February 4, 2005, he again was arrested in Caddo County for the crimes of driving a motor vehicle while under the influence of alcohol, charged as a felony, and transporting an open container of liquor. On February 8, 2005, a newspaper article was published which described his arrest and previous similar violations, and was seen in the Office of the General Counsel of the Bar Association.

¶ 5 Complainant then began an investigation and, on February 14, 2005, sent a letter to respondent's counsel requesting the facts and circumstances surrounding the reported felony arrest. Counsel responded on March 1, 2005, stating his client had contacted Lawyers Helping Lawyers and entered Valley Hope Treatment Facility on February 28, 2005. On April 7, 2005, counsel sent complainant a letter from Valley Hope Treatment Services which confirmed that respondent had successfully completed a 28–day treatment program and had been attending Alcoholics Anonymous meetings twice a week.

¶ 6 On June 9, 2005, counsel notified complainant that respondent had waived his preliminary hearing for the two pending charges of driving a motor vehicle while under the influence of alcohol, as second and subsequent offenses, in the District Court of Caddo County, and would be entering pleas of guilty. On July 20, 2005, respondent entered blind pleas to two felony charges of driving a motor vehicle while under the influence of alcohol, second and subsequent offense, in cases numbered CF–2005–17 and CF–2005–36. In CF–2005–17, he was sentenced to a term of three years in the Oklahoma Department of Corrections, all suspended, to run concurrently with the sentence in CF–2005–36 and ordered to pay a fine in the amount of $1,000.00 and costs. In CF–2005–36, he received a five-year deferred sentence to run concurrently with CF–2005–17 and fined $1,000.00 plus costs.

¶ 7 Respondent was also ordered by the district court to comply with certain rules and conditions of probation which required him to complete inpatient treatment, attend Aftercare every two weeks for twelve months, attend AA meetings at least twice weekly, have a monthly urinalysis, voluntarily give up his driver's license for one year, meet with an AA sponsor for at least one hour a week, and execute a Lawyers Helping Lawyers contract.

¶ 8 In Count II, respondent stipulated to the allegations that he had previously been charged with alcohol related offenses and admitted the following facts concerning those incidents:

1) In 1997, in Grady County, respondent was charged with driving while impaired, a misdemeanor and received a three-month deferred sentence and a $100.00 fine plus court costs;

2) On August 17, 1999, in Caddo County, respondent was arrested for driving under the influence of intoxicating liquor, a misdemeanor, to which he entered a plea of *nolo contendere*, receiving a one-year deferred sentence with costs and an order to continue counseling once a week during the probation term;

3) On March 3, 2001, in Caddo County, respondent was arrested for being in actu-

al physical control of a motor vehicle while under the influence of intoxicants;

4) On October 31, 2001, in Caddo County, respondent was arrested for three counts of alcohol-related traffic violations;

5) On January 16, 2002, in Caddo County, respondent entered pleas of *nolo contendere* to misdemeanor charges of driving under the influence, failure to yield while turning left and driving without a valid drivers license, all in case no. CM–2001–876, for which he was sentenced to a one-year suspended sentence, ordered to pay a fine of $500.00 plus costs and required to enter a 28–day inpatient treatment program; and

6) On January 25, 2002, in Caddo County, respondent entered pleas of *nolo contendere* in case no. CM–2001–161 and was given a one-year deferred sentence, to run concurrently with CM–2001–876, fined $500.00 plus costs and required to enter a 28–day inpatient treatment program.

¶ 9 Respondent testified he joined the Oklahoma Bar Association in 1974 and had served as the District Attorney for Caddo, Grady, Stephens and Jefferson Counties for many years. At the time the complaint was filed, he was practicing law with an associate in Caddo County. He related that he began drinking excessively in 1987 when he was going through a difficult divorce, but did not recognize his drinking was a problem until 1990. He then began going to Alcoholics Anonymous meetings, after which he remained sober for approximately 18 months. Respondent testified to a history of alcoholism in his family. He stated he had twice been in treatment in Tucson, Arizona, leading to a period of sobriety of more than one year, and had twice been in treatment at Valley Hope.

¶ 10 Respondent related his pride in being an attorney and the importance of his membership in the Bar. He stated that he was embarrassed by his actions, disappointed in himself, sorry for what he had done, and sick and tired of the misery he has put his family and friends and the Bar Association through. Respondent testified that his drinking had caused great conflict in his family; that while they were now on good terms, after his arrest his son had been very angry and hostile toward him and did not speak to him for six months and had not allowed him to see his grandchildren for a year. Because of his success in recovery, respondent said he is now able to be with his grandchildren.

¶ 11 Respondent testified he believed he has gained an understanding of his problems through his treatment programs and counseling, and has changed his lifestyle and perspective on life so that he now recognizes that sobriety must be first in importance in his life, which is where he now places it. He stated he recognized that the practice of law had been stressful for him and that he takes his clients' problems personally; but by attending the meetings and receiving counseling, he has learned to get his thoughts off his clients and their stressful legal problems and concentrate on his sobriety. Exhibits were admitted which showed respondent is complying with all requirements of his treatment programs, his efforts seem quite sincere, he is making above average progress and is stable in his recovery. Respondent also testified that he is current in his MCLE requirements. Respondent stated he had tried to get admitted to Valley Hope following the January 17, 2005, DUI arrest, but the insurance company would not approve his admission prior to his arrest on February 4, 2005, and he was forced to wait for a later admission date.

¶ 12 Loraine Farabow, Assistant General Counsel for the Bar Association, testified that the Bar knew that diligent efforts were being made to get respondent into a treatment facility before it mailed its letter to him on February 14, 2005. When the Bar learned of respondent's January 17 arrest in the February 8 newspaper, Farabow learned from respondent's counsel that they were working hard to get respondent admitted but there were problems with insurance which had delayed approval.

¶ 13 Dan Murdock, General Counsel of the Bar, advised the panel that no clients were neglected or harmed by respondent's misconduct, nor were there any previous complaints against him which had resulted in an investigation. He also stated that while respondent's son is in the same office where respon-

dent was charged and where respondent was formerly the district attorney, the pleas which respondent entered to the charges were blind pleas; i.e., with no recommendation from the district attorney's office.

¶ 14 Respondent stipulated that his conduct violated the mandatory provisions of Rule 1.3 of the Rules Governing Disciplinary Proceedings and Rule 8.4(a) and (b) of the Oklahoma Rules of Professional Conduct and warrants the imposition of professional discipline. In their Agreed Conclusions of Law, the parties recognized that respondent's numerous and repeated violations of Oklahoma's criminal laws prohibiting driving a motor vehicle while intoxicated or under the influence of alcohol demonstrate a disregard for the law and an indifference to legal obligations which adversely reflect on the Bar Association.

¶ 15 Following the hearing, the trial panel issued its report which found the Oklahoma Bar Association had clearly and convincingly established the facts necessary to support the charges against respondent. The panel found respondent's misconduct resulted from alcoholism and, by his own admission, from an intentional disregard for the law pertaining to driving a motor vehicle while under the influence of alcohol as far back as 1997. The panel considered the mitigating circumstances put forth by the parties' stipulations, including respondent's expressions of remorse, his full cooperation with the Bar Association, his acceptance of responsibility for his conduct, and his commitment to continuing treatment. The panel recognized respondent's misconduct was not shown to be directly related to the practice of law or an attorney-client relationship, and that until the arrests his record at the bar had been unblemished. The panel recognized that respondent had abstained from alcohol since February 27, 2005, and believed that he is no longer a risk to the public due to alcoholism so long as he remains in recovery.

¶ 16 The panel stated its concern that respondent did not seek earlier treatment for alcoholism. It also noted that despite the numerous alcohol-related charges, the respondent had not been incarcerated. The panel members expressed their admiration for respondent's admission of his alcoholism and his apparent willingness and sincere determination to change his life, but noted that compassion for the offending lawyer "must be tempered where public protection and deterrence of openly scandalous behavior and repeated indifference toward the law are concerned." Accordingly, the panel found the discipline agreed to by the parties was not appropriate under the circumstances and unanimously recommended that respondent be suspended from the practice of law for six months, have a supervised probationary period of two years with certain conditions, and pay the costs incurred in his case.

## II.

¶ 17 This Court has exclusive and original jurisdiction of bar disciplinary proceedings. RGDP 1.1. In the exercise of our constitutionally invested and nondelegable power to regulate both the practice of law and legal practitioners, we are not bound by the admissions or stipulations of the parties nor by the findings or recommendations of the trial authority, as our review is *de novo*. *State ex rel. Oklahoma Bar Association. v. Donnelly*, 1992 OK 164, 848 P.2d 543, 545–6. It is our ultimate responsibility to examine the record and assess the credibility and weight of the evidence in order to determine whether it clearly and convincingly establishes professional misconduct by respondent and, if so, what the appropriate discipline, if any, should be. *Id.*

¶ 18 Accordingly, since our review may not be accomplished unless the panel submits a complete record sufficient for our thorough and independent examination of all essential facts and relevant issues, the issue of the sufficiency of the record must be our first determination. *State ex rel. Oklahoma Bar Association. v. Giger*, 2001 OK 96, 37 P.3d 856, 860–61, 37 P.3d 856. We find the record here—which consists of the parties' stipulations, a transcript of the hearing before the trial panel, exhibits offered by the parties and admitted into evidence at that hearing, and the report of the trial panel-is adequate for our *de novo* review.

¶ 19 Respondent admits by stipulation to those facts set out in the two counts of the complaint in support of the charges of professional misconduct brought against him, and we find those stipulations were made voluntarily and knowingly and are consistent with other evidence in the record. We approve and adopt the parties' stipulations of fact and we find by clear and convincing evidence that respondent's conduct did violate the provisions of Rule 1.3, RGDP, and Rule 8.4(a) and (b), ORPC.

Rule 1.3, RGDP, provides:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

Rule 8.4 (a) and (b), ORPC, provides:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

### III

¶ 20 Complainant joins with respondent in opposing the panel's recommendation for discipline, and the parties contend generally that a six-month suspension is not warranted under the facts of this case. They argue that suspension will not serve the aims of professional discipline, that it is punishment of respondent which will not encourage others in similar circumstances to seek treatment and will be detrimental to his recovery.

¶ 21 They contend the appropriateness of their stipulated discipline of censure and probation for two years is particularly compelled by consideration of the agreed mitigating circumstances, especially respondent's remorsefulness, his acceptance of responsibility for his actions and his willing participation in treatment programs with AA and Lawyers Helping Lawyers which has led to his abstinence from alcohol for more than one year. Also, they point to his previously unblemished bar record and the absence of an allegation of harm suffered by the public or a client by reason of his drinking or actions.

¶ 22 We have taken these positive factors into account in our assessment of discipline. We are certain they will serve respondent well in his struggle to reach his goal of lifelong sobriety; however, they do not persuade us that the agreed discipline is appropriate here.

¶ 23 The record shows that respondent repeatedly got drunk and then chose to drive a vehicle in violation of the law of Oklahoma. Such acts support the conclusion of law, agreed to by respondent, that he acted in disrespect of the law and was indifferent to his legal obligations. As respondent recognized in his admissions, his actions warrant professional discipline because he is guilty of serious violations of the criminal law which have brought disrepute upon the judiciary and the legal profession, and which reflect adversely on his fitness as a lawyer.

¶ 24 This disciplinary proceeding was brought to maintain the public's confidence in the bench and bar by disciplining a lawyer who has harmed the public image of the profession by criminal misconduct outside the setting of his professional practice. The counts of the complaint brought against respondent do not concern questions regarding the quality of his professional practice or his conduct within the attorney-client relationship. His professional competence and honesty are not placed in question here and are not germane to issues concerning the quantum of appropriate professional discipline. This Court has recognized that discipline may be imposed for occurrences outside the professional setting and attorney-client relationship. See *State ex rel. Oklahoma Bar Association v. Garrett*, 2005 OK 91, 127 P.3d 600; *State ex rel. Oklahoma Bar Association v. Foster*, 2000 OK 4, 995 P.2d 1138; *State ex*

*rel. Oklahoma Bar Association v. Rogers,* 2006 OK 54, 142 P.3d 428 (2006).

¶ 25 The purpose of disciplinary proceedings is not to inflict punishment on the offending lawyer but to safeguard the interests of the of the public, the judiciary and the legal profession. *Donnelly,* 848 P.2d at 546; *State ex rel. Oklahoma Bar Association v. Carpenter,* 1993 OK 86, 863 P.2d 1123, 1129. While one of the responsibilities of this Court in the discipline process is to inquire into the lawyer's continued fitness to practice law, other responsibilities include purification of the bar, instillation of confidence in the profession by the public and deterrence of commission of similar acts in the future by the offending lawyer and other members of the bar. *Id.* at 1130.

¶ 26 Additionally, our responsibility requires us to ensure that the discipline is consistent with discipline imposed on other attorneys. While discipline should be administered fairly and evenhandedly, the terms will vary since each situation must be decided case by case, each involving different offenses and different mitigating circumstances. *Id.* Because of these differences, the range of discipline imposed in alcohol-related disciplinary matters is quite wide. See, *State ex rel. Oklahoma Bar Association v. Beasley,* 2006 OK 49, ¶¶ 37–43, 142 P.3d 410.

¶ 27 For instance, the parties contend we should follow *State ex rel. Oklahoma Bar Association v. Garrett,* 2005 OK 91, 127 P.3d 600, where we found public censure and one year of probation was the appropriate discipline when an attorney's alcohol addiction and abuse led to his arrest for two counts of felonious sexual battery outside the attorney-client relationship. After settlement with the victims, the attorney pled guilty to misdemeanor sexual battery. We considered the attorney's post-conviction behavior which showed he had taken full responsibility for his actions, he recognized the discredit he had brought on the legal profession in Oklahoma and he made a serious commitment to permanently maintain his sobriety through involvement in AA and LHL programs.

¶ 28 More on point and persuasive, however, is our recent decision in *State ex rel. Oklahoma Bar Association v. Rogers,* 2006 OK 54, 142 P.3d 428, where we suspended an attorney for two years and one day for professional misconduct arising from a pattern of repeated alcohol-related vehicle felony and misdemeanor offenses spanning over a decade. Speaking of the Court's charge to safeguard the public interest and protect the judicial system, we found it clear that the attorney's conduct had brought the bench and bar into disrepute and, considering the numerous violations and their apparent escalation of severity, we found suspension to be the appropriate discipline. Noting that the attorney's continued sobriety would be the key to his rehabilitation and reinstatement, we found it was his responsibility to participate in AA or LHL programs and we refrained from ordering him to do so.

¶ 29 In *Rogers,* the Court also stressed that the "fitness to practice law encompasses more than an absence of detriment to specific clients," and we recognized that a " 'pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.' *State ex rel. Oklahoma Bar Ass'n v. Doris,* 1999 OK 94, n. 17, 991 P.2d 1015, 1026 (quoting Rule 8.4, Comment ORPC)." *Rogers,* 142 P.3d at 433.

¶ 30 The first rule governing the admission of an individual to the practice of law in Oklahoma requires that he or she "shall have good moral character, due respect for the law, and fitness to practice law." Rules Governing Admission to Practice, 5 O.S. ch. 1, app. 5, Rule 1, Section 1. As this Court explained in the first syllabus in *In re Bond,* 1934 OK 228, 31 P.2d 921, this requirement is absolute and continues throughout an attorney's lifetime:

1. "Membership in the bar is a privilege burdened with conditions. A fair private and professional character is one of them. Compliance with that condition is essential at the moment of admission; but it is equally essential afterwards (citations omitted). Whenever the condition is broken, the privilege is lost" (citation omitted).

¶ 31 The Supreme Court of South Dakota set forth the following admonishment in *In re Discipline of Parker*, 269 N.W.2d 779, 780, which we find helpful in these circumstances:

As officers of this court, attorneys are charged with the obedience of the laws of this state and the United States. The intentional violation of those laws by those who are specially trained and knowledgeable of them is particularly unwarranted and constitutes a breach of the attorney's oath of office. Because of his position in society, even minor violations of law by a lawyer tend to lessen public confidence in the legal profession. Obedience of the law exemplifies respect for the law. To lawyers especially, respect for the law must be more than a platitude.

¶ 32 This Court stressed in *Giger* the importance of the purpose of discipline, explaining that "[t]he public must have confidence that the legal profession, which is self-regulated, will not look the other way when its members break the law. Equally important, members of the Bar must be reminded that substance abuse of any kind is incompatible with the practice of law." *State ex rel. Oklahoma Bar Association v. Giger*, 37 P.3d at 864.

¶ 33 We have consistently expressed our strong belief that substance abuse is incompatible with the fitness of an individual to practice law. *See generally Donnelly*, 848 P.2d 543; *Carpenter*, 863 P.2d 1123; *State ex rel. Oklahoma Bar Association v. Adams*, 1995 OK 17, 895 P.2d 701; *Doris*, 991 P.2d 1015; *Giger*, 37 P.3d 856; *State ex rel. Oklahoma Bar Association v. Beasley*, 142 P.3d 410; *Rogers*, 142 P.3d 428.

¶ 34 Respondent's testimony and evidence reveal that he has struggled many years with alcoholism. He began attending AA meetings in 1990 and he was hospitalized twice before 2005. His criminal history of driving a motor vehicle while intoxicated spans nearly a decade. We note the determination he has shown in his recent effort to bring his problems under control and reach his goal of sobriety. We agree with the panel's conclusion, however, that under the circumstances of this case respondent should be suspended from the practice of law for six months and placed under supervised probation for two years and we adopt that recommendation. He is further ordered to pay the costs incurred in this proceeding in the amount of $415.72 within ninety days of the date this opinion becomes final.

¶ 35 We therefore suspend respondent from the practice of law for six months and place him on supervised probation for two years with the following conditions under the auspices of a member of the Lawyers Helping Lawyers Committee. Respondent must (a) abide by all existing conditions for probation imposed by the District Court of Caddo County, Oklahoma; (b) abide by the Rules of Professional Conduct; (c) sign a contract with Lawyers Helping Lawyers and be supervised by a designated Committee member for the entire period of his probation; (d) participate in the Alcoholics Anonymous program or in one of another organization recognized by his contract with Lawyers Helping Lawyers; (e) report his attendance and status to his designated Committee member; and (f) refrain from the use or possession of intoxicants.

¶ 36 During his two-year period of supervised probation, the designated Committee member of Lawyers Helping Lawyers is required to immediately notify the General Counsel of the Oklahoma Bar Association of any failure by respondent to comply with the terms of his probation. Upon receipt of this information from this or any other source, if the General Counsel concludes that respondent has violated any of the terms of his probation, the Bar may file an application to proceed for additional discipline. The panel will then determine whether a violation has occurred and, if so, it shall forward a sufficient record of the proceedings to this Court for imposition of appropriate discipline.

¶ 37 RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW FOR SIX MONTHS AND PLACED UNDER SUPERVISED PROBATION FOR TWO YEARS, BOTH TO BEGIN ON THE DAY THIS OPINION IS FINAL; RESPONDENT IS ORDERED TO PAY THE COSTS OF THIS PROCEEDING IN THE

AMOUNT OF $415.72 WITHIN NINETY DAYS AFTER THIS OPINION IS FINAL.

¶ 38 WATT, C.J., OPALA, EDMONDSON, COLBERT, JJ.-Concur.

¶ 39 KAUGER, J.-Concurs specially.

¶ 40 LAVENDER, HARGRAVE, JJ.-Concur in part, dissent in part.

¶ 41 TAYLOR, J.-Dissents and joined by LAVENDER, J.

I respectfully dissent. I would impose similar discipline as we recently did in *Oklahoma Bar Association v. Rogers*, 2006 OK 54, 142 P.3d 428, by suspending this respondent for two years and a day.

¶ 42 WINCHESTER, V.C.J.,-Disqualified.

KAUGER, J., concurring specially.

¶ 1 I agree that discipline is necessary and that the discipline imposed is appropriate. However, this proceeding should have been brought under Rule 10, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A.[1] As early as February 14, 2005, the Oklahoma Bar Association arguably had notice that the respondent had an alcohol problem, and certainly by March 1, 2005, when it was notified that the respondent entered Valley Hope Treatment Facility.

¶ 2 This cause represents yet another in a string of recent bar cases in which the Oklahoma Bar Association has failed to invoke the provisions of Rule 10. *See, State ex rel. Oklahoma Bar Association v. Beasley*, 2006 OK 49, 142 P.3d 410; *State ex rel. Oklahoma Bar Association v. Rogers*, 2006 OK 54, 142 P.3d 428; *State ex rel. Oklahoma Bar Association v. Chapman*, 2005 OK 16, 114 P.3d 414; *State ex rel. Oklahoma Bar Association v. Hummel*, 2004 OK 30, 89 P.3d 1105. Instead, the Oklahoma Bar Association in this cause, as well as others, has chosen to ignore the proper procedures, then to join with the respondents in presenting recommendations of discipline which are less severe than the discipline recommended by the trial panel—

1. Rule 10, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A governs

apparently belatedly to utilize the spirit of the Rule.

suspension for personal incapacity to practice law.