OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SHAHAN

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SHAHAN
2017 OK 10
Case Number: SCBD-6356
Decided: 02/07/2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 10, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 



STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
IAN MICHAEL SHAHAN, Respondent.

BAR PROCEEDING

¶0 This summary disciplinary proceeding, pursuant to Rule 7, Rules Governing Disciplinary Proceedings, is based on Respondent's plea of guilty and no contest to the misdemeanor crimes of Public Intoxication, Driving Under the Influence, and Leaving Scene of Collision Involving Property Damage. This Court issued an Order of Immediate Interim Suspension of Respondent's license to practice law in the state of Oklahoma. After a hearing before the Professional Responsibility Tribunal, it recommended that Respondent receive a six month suspension, retroactive to February 1, 2016, combined with a deferred suspension of one year, subject to certain probationary rules.

INTERIM SUSPENSION LIFTED; RESPONDENT IS PUBLICLY
CENSURED; ONE-YEAR PROBATION THAT HAS BEEN SATISFIED;
PAYMENT OF COSTS.

Stephen L. Sullins, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.
Sheila J. Naifeh, Tulsa, Oklahoma, for Respondent.


WINCHESTER, J.
¶1 On November 15, 2014, Respondent, Ian Michael Shahan, was arrested in Tulsa, Oklahoma, for Public Intoxication. Subsequently, on February 6, 2015, Respondent was arrested for Driving Under the Influence (DUI) of Alcohol and Leaving Scene of Collision Involving Property Damage, also occurring in Tulsa, Oklahoma. All counts were filed as misdemeanors.
¶2 Respondent entered a plea of guilty on January 8, 2016, to the crime of Public Intoxication. That same day, Respondent pleaded guilty to the crime of Driving Under the Influence and no contest to Leaving Scene of Collision Involving Property Damage. Respondent received a $50 fine for the Public Intoxication count and an eighteen month deferred sentence for the DUI count. Respondent self-reported these arrests to the Oklahoma Bar Association (OBA).
¶3 On February 1, 2016, this Court entered an Order of Immediate Suspension. Respondent requested a hearing in order to present evidence of mitigation and, on February 18, 2016, this Court issued an Order granting Respondent's request and assigned the matter to the Trial Panel to hold a hearing. After a Rule 7 hearing on March 22, 2016, the Professional Responsibility Tribunal (Trial Panel) filed its Trial Panel Report giving its Findings of Fact, and Recommendations covering discipline regarding Respondent.
I. FINDINGS
¶4 Respondent was admitted to the Oklahoma Bar Association and his name was entered on the Roll of Attorneys in 2009. He has practiced law, in good standing, in Tulsa from 2009 until the date of his interim suspension. The Trial Panel found that Respondent was very forthcoming and cooperative with the OBA investigation and reported that no clients were or could have been harmed or adversely affected by Respondent's actions.
¶5 Respondent's pleas of guilty and/or no contest stem from two separate cases involving three criminal counts. In the first case, Respondent was arrested on November 15, 2014, for the misdemeanor of Public Intoxication. He had been to a birthday dinner for a colleague where he consumed alcohol. Respondent left the dinner with friends and continued to drink at a bar. From this bar, he took a cab to the VFW where he consumed even more alcohol and was witnessed to be extremely intoxicated.
¶6 While at the bar at the VFW, Respondent told the female bartender, "I'm going to rape the shit out of you." The bartender alerted her manager who called the police. The manager escorted Respondent outside to wait for the police. The manager testified that Respondent was not argumentative nor did he attempt to flee. Police arrived and transported Respondent to jail.
¶7 Respondent stated he was horrified when he learned of his comment to the VFW bartender. Although he testified that he cannot imagine making such an awful statement, Respondent does not contest that he said it and has since apologized to the bartender.
¶8 Regarding the second incident, Respondent testified that on February 6, 2015, he attended a Young Lawyer's Association bowling event where he consumed alcohol. After this event, Respondent went to a bar near his home where he consumed even more alcohol. While driving home, Respondent crashed his car into a utility pole. No other vehicles or people were involved in the accident. Respondent testified that he was dazed from the collision and left the scene to walk to his nearby home when he was stopped by the police and arrested. Respondent's breath test revealed a blood alcohol level of .22. Respondent pleaded guilty to the misdemeanor of Driving Under the Influence of Alcohol and no contest to Leaving Scene of Collision Involving Property Damage, also a misdemeanor.
¶9 Respondent self-reported his DUI arrest to the OBA. He stated that after this second arrest, he took all of the actions he would have counseled his own clients to take: he completed a DUI/substance abuse assessment, attended AA meetings and drug classes, and stopped drinking. Respondent also testified that he began meeting with Lawyers Helping Lawyers and volunteering with the Youthful Drunk Driving program, hoping to help others learn from his mistakes.
¶10 Respondent admits that he had become a problem drinker. He testified that for approximately eleven months following his second arrest that he did not consume any alcohol. After that point, Respondent stated that he had drinks on two occasions, as a test. Although he remained in control and did not drive on these occasions, he felt that he had worked too hard and wished to continue his sobriety. Respondent continues to meet with mentors from the Lawyers Helping Lawyers program, volunteers his time with various community service projects and shares his experiences in cooperation with the Tulsa County Youthful Drunk Driving Program in the hopes that he will prevent others from making similar poor choices to his own.
¶11 The OBA investigator testified that all of Respondent's witnesses spoke very highly of Respondent as a criminal attorney who shared great care and concern for his clients. He further testified that each witness believed that Respondent's actions leading to this matter were completely out of character for him. For example, Robert "Skip" Durbin, a Tulsa criminal defense attorney who shares office space with Respondent called him a "credit to the profession" and someone who has always been respectful of women.
¶12 Likewise, Kimberly Jantz, a family law attorney in Tulsa and close friend and law school classmate of Respondent, testified to Respondent's dedication to his sobriety and that she has never heard him utter a rude or sexist comment toward women. Tulsa County Assistant Public Defender Laura Howard is also a close friend of Respondent's. She testified that he has always been respectful and appropriate towards women. Howard further testified that Respondent's DUI accident was a "wake up call" and that he has since taken great measures to ensure a healthy lifestyle, such as attending AA meetings, volunteering at high school drinking programs and working with Lawyers Helping Lawyers. Finally, Tulsa Municipal Judge Mitchell McCune testified via telephone that Respondent was a very bright attorney who is well-liked by, and very respectful to, court staff.
¶13 The Trial Panel found that Respondent has found healthier ways to manage his personal and professional stress and that he continues to use his arrests as an opportunity to effect positive change in himself and others. As evidenced at the hearing, Respondent has a large, supportive circle of friends and professional colleagues who care about his well-being and believe in his good character. The Trial Panel found that he is in a healthy place and has made voluntary, genuine efforts to redeem himself.
II. DISCUSSION
¶14 This Court reviews all proceedings before the Trial Panel, examining the record and assessing the weight and credibility of the evidence, de novo. State ex rel. Oklahoma Bar Association v. Kinsey, 2009 OK 31, ¶ 12, 212 P.3d 1186, 1192. The recommendations of the Trial Panel are not binding on this Court. State ex rel. Oklahoma Bar Ass'n v. Anderson, 2005 OK 9, 109 P.3d 326, 330. The record herein is sufficient for our review.
¶15 Respondent's pleas of guilty to the criminal charges serve as a basis for this summary disciplinary proceeding. Rule 7.1 of the Rules Governing Disciplinary Proceedings (RGDP) provides:


"A lawyer who has been convicted or has tendered a plea of guilty or nolo contendere pursuant to a deferred sentence plea agreement in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law, regardless of whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial, shall be subject to discipline as herein provided, regardless of the pendency of an appeal."
Nevertheless, not every criminal conviction facially demonstrates the lawyer's unfitness to practice law. State ex rel. Oklahoma Bar Association v. Armstrong, 1990 OK 9, ¶ 8, 791 P.2d 815, 818. In fact, a lawyer should be professionally answerable only for offenses that indicate lack of characteristics relevant to the practice of law. Comment 2 to The Oklahoma Rules of Professional Conduct, 5 O.S.2011, ch.1, app. 3-A.
¶16 Answerable offenses typically involve violence, dishonesty, breach of trust, or serious interference with the administration of justice. This Court has previously found that a felony conviction for driving under the influence does not facially demonstrate unfitness to practice law. State ex rel. Oklahoma Bar Association v. Cooley, 2013 OK 42, ¶ 13, 304 P.3d 453, 456. However, a pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.[1]
¶17 Here, the Trial Panel found that Respondent is a skilled, criminal defense attorney with no prior disciplinary concerns. Respondent had no clients who were or could have been adversely affected by Respondent's conduct. The Trial Panel concluded from the evidence presented that Respondent's actions, especially the vulgar comment attributed to him, were completely out of character.
¶18 Respondent submitted letters of recommendation from thirty-three people, including judges, prosecutors, clients, AA members, professional colleagues and long-time friends, all attesting to his legal abilities and moral character. Several other witnesses testified on behalf of Respondent's good character, skill and dedication to his clients and the practice of law. Multiple character witnesses described him as respectful, appropriate, laid back, and charming. The Trial Panel further found that Respondent's show of remorse was sincere and that he had taken positive actions to treat his alcohol problem. The Panel recommends that Respondent receive a six month suspension, to run from February 1, 2016, and a deferred twelve month suspension subject to stated conditions.
¶19 This Court has addressed an attorney's discipline for misconduct involving alcohol in a handful of cases. This Court has recognized that when a lawyer recognizes the adverse effect of his substance abuse and cooperates in the treatment for it, discipline may be mitigated. State ex rel. Oklahoma Bar Association v. Giger, 2001 OK 96, 37 P.3d 856. In State ex rel. Oklahoma Bar Association v. Bernhardt, 2014 OK 20, 323 P.3d 222, we found that the attorney's repeated DUI offenses established a pattern of indifference to his legal obligations and reflected adversely on the legal profession. Bernhardt, a non-practicing attorney, had multiple alcohol-related offenses, including convictions for two felony DUI's and six additional misdemeanor convictions for offenses involving alcohol.
¶20 Bernhardt maintained his law license, but had not practiced law in more than 15 years and had no intention of returning to the practice of law, though he did wish to retain his license. No clients were or could have been adversely affected by his conduct. The Trial Panel found that Bernhardt is of good moral character, other than his problems with alcoholism, and is otherwise well-respected by attorneys, writers and members of the community, and by those who know and work with him. The Court lifted the respondent's interim suspension and placed him on a deferred suspension of two years and a day along with certain probationary conditions.
¶21 In another alcohol-related disciplinary case, State ex rel. Oklahoma Bar Association v. Burns, 2006 OK 75, 145 P.3d 1088, the attorney was suspended from the practice of law for six months and placed under supervised probation for two years. Burns had been arrested on two occasions within one month in 2005 and charged with felonies for driving a motor vehicle while under the influence of alcohol during each arrest and transporting an open container of liquor only during the second arrest. He pleaded guilty to two felony counts of driving under the influence, was sentenced to concurrent terms of three years in the Oklahoma Department of Corrections, all suspended, and ordered to pay a fine for $1,000.00 plus costs.
¶22 When the OBA began its investigation, it learned that the month after his second arrest Burns had contacted Lawyers Helping Lawyers and voluntarily entered a treatment facility. Subsequently his counsel sent the Bar Association a letter from the treatment center that he had successfully completed a 28-day treatment program and had been attending Alcoholics Anonymous meetings twice a week.
¶23 Burns had previously been charged with alcohol-related offenses in 1997, 1999, and twice in 2001, entering pleas of nolo contendere. He had entered treatment four times before. He had expressed remorse for his actions, admitted he was an alcoholic, and accepted full responsibility. No clients were impacted by his misconduct. The Court agreed with the Trial Panel's six month suspension and two years of probation with certain conditions. Burns, 2006 OK 75, ¶ 35, 145 P.3d at 1095.
¶24 In the case of State ex rel. Oklahoma Bar Association v. McBride, 2007 OK 91, 175 P.3d 379, the attorney had been charged in 2007 with Operating a Motor Vehicle While Under the Influence of Alcohol. He had several other alcohol-related convictions dating back to 1997. McBride admitted he was an alcoholic and sought support from Lawyers Helping Lawyers, who referred him for treatment to a psychologist, and also participated in an outpatient program. He expressed remorse and was very open with the Trial Panel.
¶25 The Court found no evidence of client neglect and credited McBride for embracing sobriety. McBride, 2007 OK 91, ¶ 22, 175 P.3d at 387. The Court followed the Trial Panel's recommended discipline of public censure coupled with a deferred suspension of two years and one day, along with certain conditions similar to those imposed by the Trial Panel herein. McBride, 2007 OK 91, ¶ 33, 175 P.3d at 390.
¶26 Finally, the case of State ex rel. Oklahoma Bar Association v. Garrett, 2005 OK 91, 127 P.3d 600, also involved a lawyer's chronic alcoholism and professional misconduct not involving clients. Garrett was convicted of two counts of misdemeanor sexual battery of two women on two different occasions, both of which occurred when he was intoxicated. He did not remember either incident. He had previous alcohol-related charges and allegations. Garrett contacted Lawyers Helping Lawyers and entered an inpatient treatment facility where he remained for 72 days until he was discharged. He subsequently attended four to five AA meetings per week. The Court imposed public censure, a one-year probation with conditions, and payment of costs.
III. CONCLUSION
¶27 Respondent's criminal convictions provide clear and convincing evidence of his actions that reflect adversely on the legal profession. His misconduct serves as a basis for the imposition of discipline, which we must determine. We appreciate Respondent's honesty, remorse and voluntary efforts to remain sober while helping others learn from his mistakes. He has garnered the support of numerous well-respected attorneys, judges, police officers, family and friends who have faith that Respondent has been rehabilitated. We find that Respondent has accepted full responsibility for the poor choices he made while consuming alcohol and that he has taken the proper steps to ensure that such behavior will not be repeated in the future.
¶28 Considering the lesser forms of discipline bestowed in earlier cases before this Court involving alcohol-related incidents, many with more repetitive incidents, we conclude that the Trial Panel's recommended discipline of a six month suspension is too punitive herein. We find public censure to be the appropriate discipline in this case and hereby lift Respondent's interim suspension. During the pendency of this case, Respondent was subject to a deferred suspension of twelve months which, as of the date of this Order, has since been satisfied. Respondent was also required to: (1) comply with all conditions of his court-imposed deferred sentence until released from his deferred sentence; (2) refrain from any and all use of alcohol, mind-altering substances or illegal drugs during the term of his deferred suspension; (3) sign and maintain a contract with Lawyers Helping Lawyers which shall monitor his compliance and provide other services as requested by Respondent; (4) waive all questions of confidentiality and permit his sponsor at Lawyers Helping Lawyers to notify the General Counsel of the Oklahoma Bar Association in the event of any default by Respondent in the terms of the probation or deferred suspension; and (5) abide by the Rules of Professional Conduct.
¶29 Respondent is ordered to pay the costs of these proceedings in the amount of $2,546.60, as reflected in the Oklahoma Bar Association's Amended Application to Assess Costs. Respondent is ordered to pay this amount within six months of the date this opinion becomes final.

INTERIM SUSPENSION LIFTED; RESPONDENT IS PUBLICLY
CENSURED; ONE-YEAR PROBATION THAT HAS BEEN SATISFIED;
PAYMENT OF COSTS.

Concur: Gurich, V.C.J., Kauger, Watt, Winchester, Edmondson, Colbert and Reif, JJ.
Dissent: Combs, C.J. 

FOOTNOTES

[1] Comment 2, ORPC, 5 O.S.2011, ch.1, app. 3-A provides: "[2] Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving 'moral turpitude.' That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation."
 




 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1990 OK 9, 791 P.2d 815, State ex rel. Oklahoma Bar Ass'n v. Armstrong
Discussed
 2001 OK 96, 37 P.3d 856, 72 OBJ 3401, STATE ex. rel. OKLAHOMA BAR ASSOCIATION v. GIGER
Discussed
 2005 OK 9, 109 P.3d 326, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ANDERSON
Discussed
 2005 OK 91, 127 P.3d 600, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GARRETT
Discussed
 2006 OK 75, 145 P.3d 1088, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BURNS
Discussed at Length
 2007 OK 91, 175 P.3d 379, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MCBRIDE
Discussed at Length
 2009 OK 31, 212 P.3d 1186, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KINSEY
Discussed
 2013 OK 42, 304 P.3d 453, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. COOLEY
Discussed
 2014 OK 20, 323 P.3d 222, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BERNHARDT
Discussed