OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BETHEA

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BETHEA
2024 OK 33
Case Number: SCBD-7443
Decided: 05/14/2024
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2024 OK 33, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

STATE OF OKLAHOMA ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,
v.
KENYATTA RAY BETHEA, Respondent.

ORIGINAL PROCEEDING FOR ATTORNEY DISCIPLINE
PURSUANT TO RULE 7, RULES
GOVERNING DISCIPLINARY PROCEEDINGS
¶0 Respondent pled guilty to a first time non-repetitive misdemeanor driving while under the influence of alcohol. Respondent collided with two different vehicles, injuring six people, three of whom were children, inflicting significant bodily harm. The Court issued an order of interim suspension in a professional disciplinary action filed under Rule 7, Rules Governing Disciplinary Proceedings, 5 O.S. 2021, ch. 1, app. 1A. The Court referred this matter to the Professional Responsibility Tribunal (PRT) for a hearing. This matter is before us for final discipline. The PRT and Bar Association recommends a six-month suspension from the date of this Court's final order. We hold the record supports a finding that the appropriate discipline is a one-year suspension with credit for time served under the interim suspension. 

RESPONDENT SUSPENDED FOR ONE YEAR FROM THE DATE OF THE INTERIM SUSPENSION WITH CREDIT FOR TIME SERVED UNDER INTERIM SUSPENSION; COSTS IMPOSED.
Jana J. Harris, Assistant General Counsel, Oklahoma Bar Association, and Katie Ogden, Assistant General Counsel, Oklahoma Bar Association, for Complainant.
Thomas A. Paruolo, and Benjamin R. Grubb, Oklahoma City, Oklahoma, for Respondent.
Edmondson, Justice.
¶1 The Complainant, Oklahoma Bar Association (Bar) initiated proceedings pursuant to Rule 7.1 and 7.2 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2021, ch. 1, app. 1-A,
[1] by filing with this Court a Notice of Judgment and Sentence and attached certified copies of the Information, Probable Cause Affidavit, the Judgment and Sentence and Summary of Facts on Plea of Guilty Misdemeanor, Court minute Order, Supplemental Court Order: Community Service- Restitution- Court Cost Sentence, Deferred 3 years, and Rules and Conditions of Supervised Probation. This Rule 7 matter is before the Court for the imposition of final discipline. On June 5, 2023, we entered an order of interim suspension "having determined that good cause has not been shown for preventing entry of an Order of Immediate Suspension."[2] Respondent has been under this interim suspension for eleven months. A trial panel hearing was conducted on December 5-6, 2023; the Trial Panel Report was issued January 8, 2024. This matter was fully briefed and ready for final discipline on March 14, 2024. Following a full review of the record, we conclude that the appropriate discipline is a one-year suspension from the date of the interim suspension with credit for time served under the interim suspension.
FACTS AND PROCEDURAL HISTORY
¶2 Respondent was arrested in Oklahoma County, Oklahoma on January 6, 2021. The district attorney initially charged him on March 31, 2021, with two felonies: (1) leaving the scene of an accident with personal injury to multiple people, including two minors; and (2) felony driving under the influence of alcohol.
[3] The charge of leaving the scene of an accident was later dismissed by the district attorney and the felony charge of driving under the influence was reduced to a misdemeanor. It is irrelevant to this Rule 7 proceeding why the district attorney did not proceed with any charge associated with leaving the scene of an accident or any felony charge. On March 23, 2023, Respondent pled guilty in Oklahoma County, Case No. CF-21-1249 to one count: misdemeanor driving under the influence, 47 O.S.2021, §11-902. The trial court deferred judgment and sentence for a period of three years until March 22, 2026. Respondent was assessed a $250 judicial assessment, ordered to pay Victim Compensation Assessment, and court costs. He was also ordered to complete ADSAC DUI School, attend Victim Impact Panel and submit to a DUI assessment, all of which he had completed by the time of his plea. No additional restitution was ordered in the criminal judgment due to a civil settlement previously reached with the injured parties.
¶3 On April 5, 2023, this Rule 7 summary disciplinary proceeding was commenced when the General Counsel of the Bar filed the Notice of Judgment and Sentence in accordance with Rules 7.1 -- 7.7, Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2021, Ch.1, App. 1-A. A lawyer convicted of a crime is subject to discipline if the underlying conviction demonstrates such lawyer's unfitness to practice law. Rule 7.1, RGDP. On June 5, 2023, we entered an Order of Immediate Interim Suspension "having determined that good cause has not been shown for preventing entry of an Order of Immediate Interim Suspension."
[4] We assigned this matter to the Professional Responsibility Tribunal (PRT) to hold a hearing and make a recommendation for final discipline.
¶4 The PRT held a hearing on December 5-6, 2023. Most of the relevant facts were undisputed, however the testimony revealed some factual errors in the arresting officer's Probable Cause Affidavit which will be discussed herein. Most exhibits were admitted without objection. Respondent preserved objections to all evidence introduced by the Bar relating to a 2015 car accident that resulted in no traffic citation and no disciplinary action or investigation. The OBA presented as witnesses: three police officers; the drivers of each of the two vehicles that Respondent hit; the OBA Investigator; and the person involved in the 2015 accident.
¶5 Respondent presented his personal physician; his licensed professional counselor; a board member with Lawyers Helping Lawyers; and four witnesses offering mitigation evidence, including an Oklahoma county district judge, a pastor, and two practicing lawyers.
¶6 It is undisputed that on the night of January 5, 2021, Respondent, who was sleep deprived, went to dinner with colleagues and had 3-4 alcoholic drinks over a few hours, and then drove under the influence of alcohol. Sometime before 8 p.m., Respondent fell asleep while driving, crossed the roadway's center line and hit two cars head-on, causing injury to six people, three of whom were children. One eight-year-old child required immediate surgery with the insertion of a metal rod in the upper leg and required at least 4 months of bedrest; this child continues to have leg pain in normal childhood activities. A second child has a facial scar running through an eyebrow to the nose that causes the child suffering.
¶7 Respondent walked away from the accident with his keys and wallet in his pockets, wandering onto an adjacent commercial parking lot; he did not check on or help any victim. Respondent testified when he heard a woman scream, he was afraid somebody had died, and he panicked. He did not provide his name or contact information to the victims. It is also undisputed that Respondent suffered a head injury and concussion, a diagnosis confirmed by the emergency room physician that night and subsequently by his treating physician. The uncontroverted evidence established that Respondent's behavior post-accident was out of character for him; there was medical evidence that his concussion "was [the] cause of some of his irregular behavior."
[5] Respondent's physician explained that a concussion or mild traumatic brain injury (TBI) affects brain functioning including memory loss, headaches, difficulty thinking, concentration, balance, mood changes and poor decision making.[6] Respondent's physician noted that he had a prior history of multiple concussions which was also a contributing and complicating factor.[7] Respondent "exhibited many of the hallmark signs of a concussion at the scene of the accident, including slurred or incoherent speech, poor decision making and confusion."[8] Respondent's memory of the events of that night are also limited, consistent with concussion. Further, Respondent's physician opined that Respondent did not exhibit any signs of ongoing alcohol abuse or dependence. The Bar offered no evidence to dispute Respondent's physician's medical testimony. One driver described Respondent after getting out of his car, as acting confused and "looking at me like he just woke up," and as if "you waking me up out of my sleep type thing."[9] She also described Respondent as being "lost in his own blood and his face."[10] 
¶8 We learned from the testimony of the arresting officer, that the Probable Cause Affidavit contained several factual errors. Most notably, Respondent was not observed by witnesses to be "running" from the accident scene. It is undisputed that Respondent walked away from the accident scene but, he did not run away as the arresting officer erroneously reported in his Probable Cause Affidavit.[11] The officer testified at the hearing that witnesses reported that Respondent was walking from the accident scene and no witness reported that he was "running" away, as referenced at least four times in his affidavit. The officer clarified at the PRT hearing, that on the night he was pursuing Respondent in his police SUV, the officer never turned on his sirens or his red and blue flashing lights, and never identified himself as an Oklahoma City Police Officer to Respondent. The Black SUV did have the words "POLICE" on the side of the vehicle, but these letters were not visible to Respondent who was in front of the vehicle at nighttime. The officer did have the spotlight activated on his patrol car. Although the Probable Cause Affidavit indicates that he yelled "stop" to Respondent, he testified this was not correct, he yelled "come here" without announcing he was a police officer. Respondent testified that it was night and dark outside; he had no idea who was driving behind him, also his glasses fell off during the accident leaving him "blind as a bat." Respondent had no idea he was being pursued by an Oklahoma City Police Officer and did not know who yelled at him to "come here." The officer continued to pursue Respondent on foot and took him to the ground and handcuffed Respondent. The officer noted that Respondent had "slurred speech, delayed response to questioning, and red watery eyes."[12] We note that as soon as Respondent was taken to the ground by the officer and handcuffs placed, Respondent was "taken into custody without further incident."[13] The officer claimed in his report that during the officer's pursuit, Respondent made "eye contact" with him and he assumed that Respondent knew he was a police officer. At the trial panel hearing the officer testified he had no knowledge about whether Respondent saw him or not. 

¶9 After his arrest, Respondent completed the Impaired Driver Accountability Program through the Oklahoma Department of Safety. An Ignition Interlock Device was installed on his car as part of this program. Although he was required to have the device on his car for only six months, he kept it for eight months as he was "trying to take responsibility and accountability for what I did."
[14] 
¶10 Respondent also voluntarily sought counseling to deal with varied and complex issues relating to the accident. The counselor diagnosed Respondent with post-traumatic stress disorder arising from early childhood events. He explained that "PTSD, trauma occurs when there is uncontrolled chemical and physical change to the body -- to the brain rather, as a result of a crisis incident."[15] Respondent suffered multiple childhood crises "that resulted in trauma over an extended duration."[16] Prior to the accident, Respondent was dealing with a number of situational life factors that affected his mental health, enhancing his trauma response; alcohol was not a contributing cause to enhancing his PTSD. His responses on the night of the accident were caused in part by his underlying PTSD. The counselor evaluated Respondent's alcohol consumption against the official medical criteria, the DSM-5, for alcohol abuse and dependence. Respondent did not meet the criteria for this diagnosis. The counselor opined that Respondent did not have a clinical problem with the use of alcohol. Following the accident, Respondent reduced his alcohol consumption by at least 80 percent (%) and altered the environment in which he consumes alcohol. In addition, he modified the people with whom he interacts; he now socializes with individuals who either do not drink or rarely drink alcohol. Respondent expressed remorse to his counselor over how his alcohol consumption and driving that night harmed others. 

¶11 Respondent also voluntarily sought out one of the Board of Directors with the Oklahoma Bar Association's Lawyers Helping Lawyers (LHL) Foundation. Respondent shared detailed information about his alcohol consumption with the LHL board member. This board member concluded that Respondent was not an alcoholic, although he had an alcohol-related incident. Based upon his conversation with Respondent and drawing from his personal experience and as a volunteer with the LHL program, he does not believe that Respondent meets the criteria of an alcoholic. The board member also discussed Respondent's sincere remorse over the harm caused from his drinking the night of the accident. Respondent's actions immediately after the accident that night are not representative of how Respondent normally conducts himself in personal and business matters. He was aware of several situational stressors Respondent was facing around the time of the accident, including health issues with his father, Respondent's divorce, and workload issues within his law firm. The board member also testified that Respondent is dedicated to serving the indigent and under-served individuals in the community and has a stellar reputation and work ethic. The Bar introduced no evidence to dispute the evidence that Respondent's actions were out of character for him. The Bar offered no evidence that any client matter was ever negatively impacted by his use of alcohol.
¶12 Respondent's four mitigation witnesses were all consistent, that Respondent's actions on the night of the accident were out of character. Testimony was offered regarding Respondent's use of alcohol in social settings, as well as his handling of his client responsibilities and advocacy. One district judge testified that she had known Respondent for a long time, and that Respondent has always had a heart for social justice and representing the under-served populations. She has never observed Respondent to show up impaired to any court appearance or any social gathering. She has never observed Respondent to drink to excess in any social situation and has no knowledge that he has an ongoing problem with alcohol. The Bar offered no evidence to dispute this testimony.
¶13 Over the objection of Respondent, the Bar introduced evidence regarding a 2015 car accident caused by Respondent. The Bar articulated that the purpose of this evidence was to establish that Respondent's prior behavior "reflects a pattern of conduct that reflects poorly on the profession of the law. It reflects a disrespect for the law and the duties and obligations that a lawyer has, particularly when involved in an accident in which they're at fault."
[17] There was no criminal citation issued from the 2015 accident, no prior criminal conviction or plea. More importantly, we note that was no prior bar investigation, no prior Rule 6 proceeding, no Rule 7 proceeding, and no prior discipline associated with this incident. For reasons discussed more fully herein, we sustain Respondent's objection to all testimony and documents relating to this 2015 event and disregard all such evidence.
ANALYSIS
¶14 This Court exercises exclusive original jurisdiction to carry out its nondelegable responsibility to discipline lawyers and to regulate the practice of law in order to safeguard the interests of the public, the judiciary and the legal profession. State ex rel. Oklahoma Bar Ass'n v. Shofner, 2002 OK 84, ¶ 5, 60 P.3d 1024, 1026. We exercise de novo review with respect to every aspect of a disciplinary inquiry. State ex rel. Oklahoma Bar Ass'n v. Cooley, 2013 OK 42, ¶ 4, 304 P.3d 453, 454. The professional discipline imposed is based upon the respondent's conduct, any prior history of respondent's professional misconduct, and the discipline imposed upon other lawyers for similar acts of misconduct. State ex rel. Oklahoma Bar Ass'n v. Wright, 2023 OK 1, ¶ 13, 523 P.3d 1106, 1109, citing State ex rel. Oklahoma Bar Ass'n v. Smith, 2016 OK 19, ¶ 36, 368 P.3d 810, 818.
¶15 A lawyer may be disciplined for "professional misconduct" as defined in the Rules of Professional Conduct.
[18] A formal disciplinary proceeding for lawyer misconduct "shall be brought by direction of the Professional Responsibility Commission," not by the Bar. Rule 6.1, Rules Governing Disciplinary Proceedings.[19] The Bar has the discretion to institute an investigation based on facts or allegations involving a lawyer,[20] but lacks the authority to independently bring a formal disciplinary proceeding under Rule 6. A bar disciplinary proceeding brought under Rule 6 shall be brought by direction of the Professional Responsibility Commission (PRC).[21] The limited ways to enhance discipline include: (1) prior conduct resulting in discipline, or (2) evidence from prior investigations, neither of which we have in this matter. In order to provide due process, any such enhancement must be pled in the Rule 6 Complaint; "the prior acts of conduct relied upon shall be set forth."[22] The Bar has not initiated a Rule 6 proceeding in this matter.
¶16 By contrast, a summary proceeding under Rule 7 is authorized when a lawyer has "tendered a plea of guilty or nolo contendere pursuant to a deferred sentence plea agreement in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law..."
[23] State ex rel. Okla. Bar Ass'n. v. Littlefield, 2023 OK 53, ¶ 6, 529 P.2d 185, 188; State ex re. Okla. Bar Ass'n. v. Armstrong, 1990 OK 9, ¶ 11, 791 P.2d 815, 819 (Armstrong I). Rule 7.2 provides:

Transmittal of Record Relating to Conviction
The clerk of any court within this State in which a lawyer is convicted or as to whom proceedings are deferred shall transmit certified copies of the Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and judgment and sentence of conviction to the Chief Justice of the Supreme Court and to the General Counsel of the Oklahoma Bar Association within five (5) days after said conviction. The documents shall also be furnished to the Chief Justice by the General Counsel within five (5) days of receiving such documents. Such documents whether from this jurisdiction or any other jurisdiction shall constitute the charge and be conclusive evidence of the commission of the crime upon which the judgment and sentence is based and shall suffice as the basis for discipline in accordance with these rules. 

Rule 7.2, RGDP, 5 O.S. 2021, ch. 1 app. 1-A). The sole crime we consider in this Rule 7 proceeding is "misdemeanor DUI," the only "crime upon which the judgment and sentence is based."
¶17 The Rule 7 proceeding is a streamlined process that does not require the scrutiny or authorization of the PRC. The sole triggering event is not the decision of the PRC, but the fact that a lawyer has pled guilty to a crime where that specific crime "demonstrates such lawyer's unfitness to practice law."
[24] The "charge" of leaving the scene of the accident is not actionable under this Rule 7 proceeding; there has been no criminal conviction in this regard. However, because these actions may demonstrate a violation of our ethical rules, Rule 7.6 specifically notes that the PRC has full authority in "initiating and conducting disciplinary proceedings [Rule 6] upon charges identical to those set forth in a criminal complaint, indictment, or information, notwithstanding the pendency or final disposition of the criminal matter." [25] If a conviction is later overturned the Rule 7 proceeding "shall be dismissed immediately."[26] This Court has no jurisdiction to consider a criminal charge under a summary Rule 7 proceeding; only convictions or pleas of guilty or nolo contendere are properly before this Court in such proceedings.[27] The Bar has the authority to refer any such conduct to the PRC for evaluation and direction on pursuing a Rule 6 proceeding on any conduct that is concerning. There are no Rule 6 charges before us to consider with respect to "leaving the scene of an accident."
¶18 Following the trial panel's hearing in Armstrong I, we discussed that Armstrong had a prior conviction of a felony DUI, in 1989, as well as two prior convictions of misdemeanor DUI in 1985. State ex rel. Oklahoma Bar Ass'n v. Armstrong, 1992 OK 79, 848 P.2d 538 (Armstrong II). He also suffered from the disease of alcoholism, had undergone rehabilitation, and he was actively engaged in treatment and the rehabilitation of others in the community, but he had no allegations of professional misconduct. Id. There was no evidence that Armstrong's use of alcohol impaired his ability to conduct efficiently or properly his client affairs, and no evidence that his crime adversely affected his practice of law. Id. We found no evidence that Armstrong was unfit to practice law and denied the Bar's request for discipline. Id., citing State ex rel. Oklahoma Bar Ass'n v. Jones, 1977 OK 118, 566 P.2d 130. We also noted that a Rule 6 proceeding could be brought for any future acts of misconduct or failure to follow the terms of his sentence.
¶19 The Bar is urging that we consider the facts surrounding a criminal charge which did not result in a conviction, arguing that it relates to Respondent's "fitness" to practice law. A Rule 7 proceeding is not a gateway for summary discipline for any criminal charge; it is limited to convictions. This Court has no "prosecutorial authority over Bar discipline and cannot even obliquely cause the institution of a charge of professional misconduct."
[28] Our authority over professional discipline is conferred by the Constitution and by statute. In re Reinstatement of Fraley, 2005 OK 39, ¶ 33, 115 P.3d 842, 851. This Court possesses original and exclusive jurisdiction in all disciplinary matters for all persons licensed to practice law in Oklahoma. Rule 1.1, RGDP. However, there are constitutional due process safeguards for all lawyers facing discipline. "We perform the legislative and adjudicative functions directly, but the enforcement or prosecutorial role is placed by our rules with the organs of the Bar in order to meet the demands of constitutional due process." Id. Because this Court "cannot constitutionally be both the judge and prosecutor, we may not control directly or indirectly those decisions made in the exercise of prosecutorial judgment as to whether to investigate and commence and prosecute charges."[29] Id. The Bar has only sought discipline under Rule 7 for the misdemeanor conviction.
¶20 Next, the Bar has urged that we should consider as evidence of a "pattern of behavior" the fact that Respondent had a civil negligence action judgment against him involving a car accident. The Bar asserted that the plaintiff in the related negligence action, believed Respondent had been drinking or was under the influence at the time of the accident. This "belief" is not proper evidence for this Court to consider in this Rule 7 proceeding. Even in a formal disciplinary proceeding under Rule 6, we can only consider previously adjudicated lawyer "misconduct" where the facts are charged in the complaint and proved and the accused has been afforded an opportunity to rebut such charges.
[30] The General Counsel and Commission are authorized to include only such prior conduct that has (1) resulted in discipline; or (2) evidence from a prior investigation, as a means to enhance discipline.[31] Respondent has no history of any prior lawyer discipline and there are no prior Bar investigations; there is no basis at all for "enhancement" as defined by the governing rules.
¶21 The scope of the inquiry in Rule 7 proceedings is limited to whether the crime demonstrates a lawyer's unfitness to practice law as we have carefully outlined above. State of Okla. ex rel. Okla. Bar Ass'n. v. McBride, 2021 OK 61, ¶ 9, 500 P.3d 619, 622, citing State of Okla. ex rel. Okla. Bar Ass'n. v. Cooley, 2013 OK 42 ¶ 2, 304 P.3d 453, 454. Although a criminal conviction for driving under the influence does not automatically establish an attorney's unfitness to practice law under Rule 7, our decisions in this area are guided by Rule 8.4 of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S. 2021, ch. 1, app. 3-A. Id. We noted Rule 8.4 (b) defines professional misconduct to include a criminal act reflecting adversely on a lawyer's "honesty, trustworthiness, or fitness as a lawyer."[32] Id.; see also, State of Okla. ex rel. Okla. Bar Ass'n v. Conrady, 2012 OK 29, ¶ 7, 275 P.3d 133, 136.
¶22 The Bar elected to file this disciplinary proceeding solely based on Rule 7, RGDP; the PRC opted to not proceed with a more expanded Rule 6 action. Respondent has never had any type of prior formal disciplinary action before this Court or formal investigation resulting in any type of finding of misconduct. The Bar has attempted to offer examples that relate to a prior car accident involving Respondent, where such prior accident resulted in no criminal conviction, no criminal charge, and no allegation of lawyer misconduct. While these prior actions could be the basis for the Bar or PRC to initiate an investigation and determine whether a formal Rule 6 action was warranted, they are not relevant to this Rule 7 proceeding.
¶23 In this Rule 7 matter, discipline can only be imposed if the crime demonstrates Respondent's unfitness to practice law.
[33] Although there is no evidence that Respondent has a chronic substance abuse problem, this misdemeanor crime involved alcohol and moreover, significant injury was inflicted upon innocent third parties, including minor children who have injuries that have ongoing impact in their lives. We have not considered a similar case with a first-time misdemeanor driving under the influence, with a car accident, causing injuries to multiple people and without evidence Respondent has a substance abuse problem. While this may be a misdemeanor offense, Respondent's actions had serious implications. The clear and convincing evidence before us establishes that Respondent is remorseful for his actions and has taken additional steps by leaving the Ignition Interlock Device on his car for an extra two months, he independently sought out counseling to learn better life coping skills and for healing chronic PTSD; he also sought out LHL help to ascertain whether he met criteria for that group, which he did not. There is no evidence that Respondent has a history of driving under the influence. The clear and convincing evidence before us is this a first time and very unfortunate accident, caused by Respondent's unmindful actions.
¶24 A similar case was found in Georgia where the lawyer, Calhoun was convicted of felony serious injury by vehicle and one count of felony driving under the influence of alcohol. Matter of Calhoun, 268 Ga. 877, 494 S.E.2d 335 (1998). The accident victim in Calhoun was left paralyzed from the neck down. Calhoun was given a six-month suspension. Although Respondent has only a misdemeanor driving under the influence conviction, he hit two separate cars head-on and inflicted serious injuries to six people, including three minor children who have lingering issues. No victim was left paralyzed as in Calhoun, but six different people were injured, with one child who faced a serious surgery with insertion of a steel pin in the leg and another is left with a scar on the face. Both children have ongoing repercussions from their injuries. We find the guidance in Calhoun comparable to the matter before us and find the appropriate discipline for Respondent is a one-year suspension from the date of the interim suspension with credit for time served in his interim suspension.
¶25 Respondent received a three-year deferred sentence until March 22, 2026, and was assessed monetary costs and fees, which he paid in full. Our decision is without prejudice to the Bar reopening this Rule 7 proceeding for discipline should the Respondent's deferred sentence be accelerated for any reason or from the Bar bringing a Rule 6 proceeding if directed by the PRC and a formal Complaint filed by the Bar.
¶26 The Bar filed an Application to Assess Costs, seeking the following: Certified mail $62.34, Court Transcript Expenses- $5661.40, PRT expenses - $278.90, Witness Travel Expense- $60, for total request of $5,923.64. The Bar's request for costs is granted in the amount of Five Thousand Nine Hundred Twenty-Three and Sixty-Four Cents ($5,923.64). The Respondent shall pay all costs within ninety days from the date this Opinion is adopted. We hereby order that Respondent's discipline is a one-year suspension from the date of the interim suspension with credit for time served during the interim suspension; Respondent is ordered to pay costs as directed.

RESPONDENT SUSPENDED FOR ONE YEAR FROM THE DATE OF THE INTERIM SUSPENSION WITH CREDIT FOR TIME SERVED UNDER INTERIM SUSPENSION; COSTS IMPOSED.
Kane, C.J., Rowe, V.C.J., Kauger, Winchester, Edmondson, JJ., concur;
Kuehn,J. (by separate writing), concurs in result;
Combs (by separate writing) and Darby, JJ., concur in Part; dissent in part;
Gurich, J., recused.

FOOTNOTES
[1] The official statues of Oklahoma can be found at https://govt.westlaw.com/okjc.
[2] SCBD 7443, OBA v. Bethea, Order of Immediate Interim Suspension.
[3] State of Okla. v. Bethea, CF 2021-1249, Oklahoma County.
[4] SCBD No. 7443, OBA v. Bethea, Order of Immediate Suspension, June 5, 2023.
[5] Resp. Tr. Exhibits, Ex. 8, Ltr. Of Rachelle Wilson, D.O.
[6] Id.
[7] Id.
[8] Id.
[9] Tr. Vol. 1, pp. 47-49.
[10] Id.
[11] Tr. Vol 1, pp.81-162
[12] SCBD 7443, OBA v. Bethea, Notice and Judgment of Sentence, Ex. 1, Aff. of Prob Cause.
[13] Id.
[14] Tr
[15] Tr. Vol. I, p. 294, testimony of Michael Spencer, LPC.
[16] Id.
[17] Transcript, Vol. I, p. 18.
[18] Rules of Prof. Conduct, Rule 8.4 Misconduct
It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice....

[19] Rule 6.1, Manner of Instituting, Rules Governing Disciplinary Proceedings.
[20] Rule 5.1, Form of Grievances, Requests for Investigations

.... "the General Counsel or the Commission may, in their discretion, institute an investigation on the basis of facts or allegations involving a lawyer or the unauthorized practice of law brought to their attention in any manner whatsoever."

[21] Rule 6, RGDP,
Formal disciplinary proceedings in matters involving misconduct by lawyers shall be brought by direction of the Professional Responsibility Commission.

The proceeding shall be initiated by a formal complaint prepared by the General Counsel, approved by the Commission, signed by the chairman or vice-chairman of the Commission, and filed with the Chief Justice of the Supreme Court. ....

[22] RGDP, Rule 6.2

Contents of Formal Complaint

The complaint shall set forth the specific facts constituting the alleged misconduct, and if prior conduct resulting in discipline, or evidence from prior investigations, is relied upon to enhance discipline, the prior acts or conduct relied upon shall be set forth.

[23] RGDP, 7.1
[24] RGDP, Rule 7.1
[25] RGDP, Rule 7.7
[26] RGDP, Rule 7.5

If an appeal is perfected ... and such judgment is reversed, the disciplinary proceeding shall be dismissed immediately.

[27] RGDP, Rule 7.1, 7.5
[28] Tweedy v. Okla. Bar Ass'n, 1981 OK 12, 624 P.2d 1049, 1055 ("this court can no longer cast itself in the dual role of judge and enforcer to command or control, directly or obliquely, the institution of bar charges.").
[29] citing, Tweedy v. State ex rel. Oklahoma Bar Association, 624 P.2d at 1054--1055; State ex rel. Oklahoma Bar Association v. Minter, 2001 OK 69, ¶ 5, 37 P.3d 763, 768.
[30] " .... In fashioning the degree of discipline to be imposed for misconduct, the Professional Responsibility Tribunal and the Court shall consider prior misconduct where the facts are charged in the complaint and proved and the accused has been afforded an opportunity to rebut such charges." Rule 1.7, RGDP.
[31] "The complaint, shall set forth the specific facts constituting the alleged misconduct, and if prior conduct resulting in discipline, or evidence from prior investigations, is relied upon to enhance discipline, the prior acts or conduct shall be set forth. Rule 6.2, RGDP.
[32] Rule 8.4 Misconduct
It is professional misconduct for a lawyer to: ....
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; ....
[33] Rule 7.1, RGDP, Criminal Conviction of Lawyer
"A lawyer who has been convicted or has tendered a plea of guilty or nolo contendere pursuant to a deferred sentence plea agreement in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law, regardless of whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial, shall be subject to discipline as herein provided, regardless of the pendency of an appeal." (Emphasis added).

 KUEHN, J., CONCURRING IN RESULT:
¶1 For all practical purposes, as a consequence of his actions Respondent will have been suspended from the practice of law for a year. For that reason alone I concur in the result. I write separately to address the Majority's narrow view of the scope of review in Rule 7 proceedings. My colleagues joining the Majority Opinion, which focuses on the outcome of Respondent's disciplinary action, are missing the Opinion's real importance. The fact is that the Majority Opinion changes the way we think about the application of Rule 7, and limits what we can consider in determining appropriate discipline after an attorney is convicted of a crime.
¶2 Rule 7 allows for summary discipline proceedings when an attorney has been convicted of a crime; the conviction or plea of guilty serves both as the charge and sufficient basis for discipline. Rule 7.2, Rules Governing Disciplinary Proceedings, 5 O.S. ch. 1 app. 1-A. These include matters set forth in an indictment or Information, as either document may both constitute the charge and form a basis for discipline. Rule 7.2, RGDP, 5 O.S. ch. 1 app. 1-A. A Rule 7 proceeding is first and foremost intended to determine an attorney's fitness to practice law. State ex rel. Oklahoma Bar Ass'n v. Lance, 2023 OK 98, ¶ 6, 540 P.3d 458, 462-63. Unfitness to practice reflects on a lawyer's "honesty, trustworthiness or fitness as a lawyer in other respects", including "conduct involving dishonesty, fraud, deceit or misrepresentation." Rule 8.4(b), (c), Rules of Professional Conduct, 5 O.S. ch. 1, app. 3-A. Consequently, in a Rule 7 proceeding this Court both can and must review the attorney's conduct surrounding the events leading to the conviction. State ex rel. Oklahoma Bar Ass'n v. Armstrong (Armstrong I), 1990 OK 9, ¶ 8, 791 P.2d 815, 818.
¶3 Respondent drove while intoxicated, crossed a center line and hit two vehicles head-on, injured two children, left the scene of the collisions on foot, and did not stop when ordered to do so by police. He was charged with one count of leaving the scene of an accident, and one count of causing an injury accident while driving under the influence. Unlike many similarly situated defendants, Respondent got the benefit of a plea deal by which the first charge was dropped and the second reduced to misdemeanor driving while intoxicated. The Majority limits our review to this single crime, and the Opinion's language suggests that the Court may consider only the crime itself -- the type of charge -- rather than any facts or circumstances surrounding it.
¶4 I believe this is a misreading of Armstrong I, and does not reflect this Court's regular analysis in other Rule 7 cases. In Armstrong I, the attorney was convicted of felony driving under the influence. Given that charge, the Court determined that the relevant circumstances included the history of his alcohol use, any treatment he may have received, his reputation for alcohol use, and whether it was believed to affect his ability to practice. Armstrong I, 1990 OK 9, ¶ 11, 791 P.3d at 818-19. But the Court did not say that our consideration in Rule 7 proceedings must be restricted to the nature of the crime itself. Rather, the focus for discipline was on the Respondent's own conduct, relevant to the conviction, which occurred "before, during and after" it. Id.[1] This Court has considered both the facts and circumstances surrounding a conviction, and a lawyer's conduct after it, in determining an appropriate punishment. See, e.g., State ex rel. Oklahoma Bar Ass'n v. Lockard, 2023 OK 110, ¶ 9, 538 P.3d 871, 873 (and cases cited therein); Lance, 2023 OK 98, ¶¶ 8-11 , 540 P.3d at 463-64; State ex rel. Oklahoma Bar Ass'n v. Trenary, 2016 OK 8, ¶¶ 12-13, 368 P.3d 801, 806-7; State ex rel. Oklahoma Bar Ass'n v. Stewart, 2003 OK 13, ¶¶ 12-13, 71 P.3d 1, 3 (Court reviewed stipulations that attorney committed uncharged acts similar to those which formed basis for convictions).
¶5 And, as Justice Combs notes in his dissent, the Majority doesn't in fact do what it says we must do. Apparently recognizing that neither the PRT nor this Court can determine an appropriate punishment without considering some facts, and realizing the unwisdom of disregarding the actual facts here, the Majority includes for its consideration the fact that there was "a car accident causing injuries to multiple people". Majority Op. at ¶ 23. That is, setting aside the passive and minimizing tone of this characterization,[2] the Majority looks at the result of the crime for which Respondent was convicted -- the collision and injuries -- which, itself, has nothing to do with the crime of driving under the influence. Why, if we are only concerned with the nature of the crime involved, is this relevant to our decision? And why limit our consideration to this result, but refuse to consider the fact that, after causing the collision and injuries, Respondent left the scene and did not stop for police? Surely that is just as important, if we are reviewing Respondent's conduct to determine his fitness to practice law. Arguably it is more important: while misdemeanor driving under the influence may not reflect on one's ability to practice, the choices to leave the scene of an injury crime and not obey law enforcement orders surely do.
¶6 When this Court remanded the case to the PRT for a hearing on appropriate discipline, we specifically tasked the PRT with determining whether Respondent's use of alcohol affected his ability to practice law. The PRT concluded that, overall during that hearing, Respondent was not fully forthcoming, candid or accurate, and that his inability to be open or truthful with the PRT panel suggested Respondent had not fully taken responsibility for his actions. Report of the Trial Panel 15-16, Jan. 8 2024. Consequently the PRT was unable to tell this Court whether Respondent's alcohol use affected his ability to practice law. This was the hearing in which Respondent had the opportunity to explain the circumstances and conduct which led to his conviction -- the time when he should have been most open and forthcoming.
¶7 Rule 7 demands a thorough analysis of all the circumstances surrounding a criminal conviction. And this Court, while not bound by any particular PRT findings or conclusions, should at the least take them into account. I cannot join the Majority's disregard of the latter, or attempt to narrow the former. I concur in result.FOOTNOTES
[1] I agree with the Majority that the uncharged allegations of previous similar conduct are not appropriate in a Rule 7 setting. However, I find it unnecessary to discuss that further, as there is ample evidence to consider related to the conviction at issue.
[2] Respondent chose to drive while impaired. That choice caused two head-on collisions, which in turn caused injury to several victims. Respondent then chose to leave the scene.

 COMBS, J., with whom DARBY, J., joins, concurring in part and dissenting in part:¶1 I concur in the majority's judgment deeming Respondent unfit to practice law, subjecting him to final discipline, and imposing costs. I dissent, however, from the majority's imposition of a mere one-year suspension with credit for time served under the interim suspension--particularly where the Professional Responsibility Tribunal (PRT) has "unanimously" found that "Respondent was not fully forthcoming, candid, or accurate regarding either the 2015 or the 2021 accidents, particularly in his testimony about leaving those accidents" and that such "refusal or inability to be open and truthful indicates to the Trial Panel that Respondent has not taken full responsibility for his conduct." Report of the Trial Panel 15--16, Jan. 8, 2024. Moreover, in response to this Court's direction to determine "whether respondent's use of alcohol impairs or tends to impair his ability to properly conduct the affairs undertaken on behalf of a client in the practice of law," Order 1--2, Oct. 16, 2023 (quoting State ex rel. Okla. Bar Ass'n v. Armstrong (Armstrong I), 1990 OK 9, ¶ 11, 791 P.2d 815, 818--19), the PRT has found that, "[b]ecause of this concern [i.e., Respondent's failure to take responsibility] and Respondent's decision to continue to drink alcohol, the Trial Panel cannot advise the Court if Respondent's present consumption of alcohol does or does not impair his ability to practice law," Report of the Trial Panel 16. Considering these findings, I would make the one-year suspension commence on the date this opinion issues, with no credit for time served under the interim suspension.
¶2 More importantly, however, I write separately to voice my disagreement with two of the majority's legal holdings.
¶3 First, I disagree with the majority's conclusion that we cannot consider the facts and circumstances surrounding Respondent's DUI conviction. See Majority Op. ¶¶ 16, 19 (trying to limit what we can consider by stating that "[t]he sole crime we consider in this Rule 7 proceeding is 'misdemeanor DUI,' the only 'crime upon which the judgment and sentence is based'" and rejecting the Bar's proffer of the facts and circumstances surrounding the criminal conviction). This Court's precedent in State ex rel. Oklahoma Bar Association v. Armstrong (Armstrong I), 1990 OK 9, 791 P.2d 815, has already settled this question, announcing that "the scope of the inquiry includes the particular lawyer's unfitness to practice law and not merely the type of crime the lawyer stands convicted of," as informed by the definition of "conduct reflect[ing] adversely on fitness to practice law" set forth in Comment 2 to Rule 8.4 of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2011, ch. 1, app. 3-A. Armstrong I, 1990 OK 9, ¶ 8, 791 P.2d at 818 (emphasis added). I also believe that Rule 7.2 permits us to consider all underlying facts and circumstances set forth in the "indictment or information," as those are two of the "documents . . . [that] shall constitute the charge . . . and shall suffice as the basis for discipline in accordance with these rules." Rule 7.2, Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.Supp.2020, ch. 1, app. 1-A. Nothing else in Rules 5, 6, or 7 prevents the Bar Association from presenting (as they have done) or this Court from considering evidence of the underlying facts and circumstances of the crime--even if some of the charges based on those facts and circumstances are eventually dropped because of a plea deal.
¶4 Second, I disagree with the majority's conclusions that evidence of a 2015 hit-and-run collision "is not proper evidence for this Court to consider in this Rule 7 proceeding" and that "Respondent's objection to all testimony and documents relating to this 2015 event" must be sustained, see Majority Op. ¶¶ 13, 20, while at the same time erroneously determining that "[t]he Bar introduced no evidence to dispute the evidence that Respondent's actions were out of character for him," see id. at ¶ 11. As Rule 8.4 of the ORPC provides, evidence of "[a] pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation" that constitutes unfitness to practice law. Rule 8.4, ORPC, 5 O.S.2011, ch. 1, app. 3-A. Thus, evidence of the prior hit-and-run motor vehicle accident is relevant and admissible for both the PRT and this Court to weigh in light of the clear-and-convincing burden of proof that applies in all bar disciplinary cases--even Rule 7 disciplinary cases, see State ex rel. Okla. Bar Ass'n v. Faulk, 2021 OK 46, ¶ 13, 496 P.3d 612, 616 (stating in a Rule 7 proceeding that this Court "review[s] the evidence de novo to determine whether the allegations of misconduct have been established by clear and convincing evidence"); State ex rel. Okla. Bar Ass'n v. Trenary, 2016 OK 8, ¶ 6, 368 P.3d 801, 804--05; State ex rel. Okla. Bar Ass'n v. Bernhardt, 2014 OK 20, ¶ 29, 323 P.3d 222, 228; State ex rel. Okla. Bar Ass'n v. Clayborne, 2013 OK 92, ¶¶ 3--4, 311 P.3d 846, 847 (wherein this Court "agree[d]" with the Bar Association's contention that the "criminal conviction of the felony of subornation of perjury constitutes clear and convincing evidence of his unfitness to practice law and serious interference with the administration of justice" in a Rule 7 proceeding); Rule 6.12(c), R. Governing Disciplinary Proceedings (RGDP), 5 O.S.2011, ch. 1, app. 1-A (establishing the clear-and-convincing burden of proof for "contested case[s]"). But even assuming that admission during the Bar's case-in-chief was erroneous, the same evidence would nevertheless be admissible for purposes of impeachment during Respondent's case-in-chief, as such evidence tends to demonstrate that Respondent's behavior--both in terms of imbibing alcohol and causing a hit-and-run collision--was not "out of character" for him.

I. EVIDENCE OF THE FACTS AND CIRCUMSTANCES SURROUNDING THE CRIME OF CONVICTION ARE ADMISSIBLE

A. The Seminal Case of Armstrong I Permits This Court to Consider the Underlying Facts and Circumstances of an Arrest that Leads to Conviction
¶5 My first disagreement with the majority's ruling concerns their decision to ignore relevant evidence that demonstrates Respondent's dishonesty, his interference with the administration of justice against him, a pattern of repeated offenses involving him trying to avoid civil and criminal liability, and an overall disregard for the law--all of which goes to his unfitness to practice law. The Bar has presented us with evidence that Respondent's DUI conviction demonstrates unfitness to practice law (1) insofar as the underlying facts and circumstances reveal he fled the scene of an injury motor vehicle accident and attempted to evade police and (2) insofar as Respondent's involvement in one prior hit-and-run accident would demonstrate a pattern of repeated offenses indicating an indifference to legal obligations. In my opinion, such evidence meets the clear-and-convincing burden of proof for demonstrating unfitness.
¶6 According to the majority, "[t]he scope of the inquiry in Rule 7 proceedings is limited to whether the crime demonstrates a lawyer's unfitness to practice law . . . . In this Rule 7 matter, discipline can only be imposed if the crime demonstrates Respondent's unfitness to practice law." Id. ¶¶ 21, 23 (emphasis added) (citing State ex rel. Okla. Bar Ass'n v. McBride (McBride II), 2021 OK 61, ¶ 9, 500 P.3d 619, 622; State ex rel. Okla. Bar Ass'n v. Cooley, 2013 OK 42, ¶ 2, 304 P.3d 453, 454)).
¶7 Yet somehow, the majority also reaches the ultimate conclusion that Respondent's DUI conviction alone demonstrates unfitness to practice law by clear and convincing evidence. I would suggest that, despite their denouncement of the Bar's argument that we should consider the underlying facts and circumstances of the crime, the majority is nevertheless guilty of doing the very thing it claims to eschew. If the majority was only considering the fact that the Respondent has been convicted of a first-time misdemeanor count of Driving Under the Influence in violation of 47 O.S.Supp.2020, § 11-902, they would have recommended dismissing the case against him for failure to demonstrate unfitness.
¶8 Instead, the majority looks to the underlying facts and circumstances that would have supported a charge of which Respondent was not ultimately convicted--i.e., the misdemeanor charge of Causing an Accident Resulting in Personal Injury while Driving Under the Influence in violation of 47 O.S.Supp.2020, §§ 11-902 and 11-904(A)(1).[1] Specifically, the majority observes that although "[w]e have not [previously] considered a similar case," we are now faced "with a first-time misdemeanor driving under the influence, with a car accident causing injuries to multiple people and without evidence Respondent has a substance abuse problem." Majority Op. ¶ 23 (emphasis added). This demonstrates the majority is relying upon the underlying facts that a collision occurred and that the collision resulted in "significant injur[ies] [that] w[ere] inflicted upon innocent third parties, including minor children who have injuries that have ongoing impact in their lives." Id. Such facts are not essential elements of proof for the underlying crime of conviction, Driving Under the Influence. The prosecutor didn't have to prove that a collision occurred, let alone that personal injuries resulted therefrom, in order to convict Respondent of a misdemeanor DUI. The prosecutor only had to prove that Respondent drank and drove, which Respondent readily admitted in his guilty plea paperwork. Notice of J. & S. ex. 2, at 4, Apr. 5, 2023 (Exhibit 2 was the "JUDGMENT AND SENTENCE and SUMMARY OF FACTS ON PLEA OF GUILTY MISDEMEANOR" from Respondent's criminal case, State v. Bethea, No. CF-2021-1249 (Okla. Cty. Dist. Ct. file Mar. 23, 2023), where on the fourth page Respondent filled in the blanks with his own handwriting that "ON THE 5 DAY OF January , 20 21 , In OKLAHOMA COUNTY, OKLAHOMA, I committed the following act(s): Drove a Motor Vehicle Under the Influence of Alcohol on a public roadway "). Thus, the majority demonstrates they are also relying upon underlying facts and circumstances about the collision and the resulting injuries.
¶9 That only begs the question, what makes the majority's underlying facts and circumstances acceptable for this Court's consideration, while other "facts surrounding a criminal charge which did not result in a conviction," Majority Op. ¶ 19--i.e., facts about Respondent leaving the scene of an accident with personal injury--are not? In other words, how can the majority rely upon underlying facts and circumstances that support the charge of Causing an Accident Resulting in Personal Injury while Driving Under the Influence and, at the same time, conclude that "[t]he 'charge' of leaving the scene of the accident is not actionable under this Rule 7 proceeding[ because] there has been no criminal conviction in this regard"? I believe this Court should be able to consider all of the underlying facts and circumstances.
¶10 Nothing in the majority's cited cases of McBride II or Cooley stands for the proposition that this Court cannot look beyond the crime of conviction at the underlying facts and circumstances. The majority's reliance upon the statements in McBride II and Cooley about whether "the crime demonstrates a lawyer's unfitness" is a nonsequitur insofar as those statements do not really delve into whether underlying facts and circumstances can be considered. More importantly, however, other statements in McBride II and Cooley do suggest that this Court can consider other evidence when the conviction itself "does not facially show a lawyer's unfitness to practice law" or "does not, ipso facto, establish an attorney's unfitness to practice law under Rule 7." McBride II, 2021 OK 61, ¶ 9, 500 P.3d at 622 (citing Armstrong I, 1990 OK 9, 791 P.2d 815; State ex rel. Okla. Bar Ass'n v. Hart, 2014 OK 96, ¶ 10, 339 P.3d 895, 899); Cooley, 2013 OK 42, ¶¶ 12--13, 304 P.3d at 456 (citing Armstrong I, 1990 OK 9, 791 P.2d 815; Rule 8.4, ORPC, 5 O.S.2011, ch. 1, app. 3-A). In such scenarios, the Court may consider underlying facts and circumstances that demonstrate "professional misconduct" as defined in Comment 2 to Rule 8.4 of the ORPC. McBride II, 2021 OK 6, ¶ 9, 500 P.3d at 622 (citing Hart, 2014 OK 96, ¶ 10, 339 P.3d at 899). According to Comment 2, the type of illegal conduct that demonstrates unfitness to practice law was traditionally described "in terms of offenses involving 'moral turpitude'" but is now described as "[o]ffenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice" or "[a] pattern of offenses, even ones of minor significance when considered separately, [that] can indicate indifference to legal obligation." Rule 8.4 cmt. 2, ORPC, 5 O.S.2011, ch. 1, app. 3-A. It appears the majority endorses this reading of McBride II. See Majority Op. ¶ 21.
¶11 McBride II and Cooley are part of a long line of cases stemming from State ex rel. Oklahoma Bar Association v. Armstrong (Armstrong I), 1990 OK 9, 791 P.2d 815, which is this Court's seminal case involving a Rule 7 proceeding based on a DUI conviction. See, e.g., See, e.g., State ex rel. Okla. Bar Ass'n v. McCoy, 2023 OK 79, ¶ 15, 531 P.3d 1276, 1279; State ex rel. Okla. Bar Ass'n v. Littlefield, 2023 OK 53, ¶¶ 7--8, 529 P.3d 185, 188; McBride II, 2021 OK 6, ¶ 9, 500 P.3d at 622; State ex rel. Okla. Bar Ass'n v. Elsey, 2019 OK 81, ¶¶ 15--16, 455 P.3d 903, 906; State ex rel. Okla. Bar Ass'n v. Hunt, 2017 OK 28, ¶¶ 4--5, 394 P.3d 216, 217--18; State ex rel. Okla. Bar Ass'n v. McMillen, 2017 OK 26, ¶¶ 14--15 & nn.8--9, 393 P.3d 219, 223 & nn.8--9; State ex rel. Okla. Bar Ass'n v. Shahan, 2017 OK 10, ¶¶ 15--17, 390 P.3d 254, 257--58; Hart, 2014 OK 96, ¶ 10, 339 P.3d at 899; State ex rel. Okla. Bar Ass'n v. Bernhardt, 2014 OK 20, ¶¶ 20--21, 29, 323 P.3d 222, 226--28; State ex rel. Okla. Bar Ass'n v. McBride (McBride I), 2007 OK 91, ¶¶ 11--12, 175 P.3d 379, 385 (brought pursuant to Rules 6, 7, and 10 of the RGDP). "Armstrong and [its follow-up case] Armstrong II have guided our de novo consideration in Rule 7 summary disciplinary proceedings." Cooley, 2013 OK 42, ¶ 14, 304 P.3d 453, 456 (citing Armstrong, 1990 OK 9, 791 P.2d 815; State ex rel. Okla. Bar Ass'n v. Armstrong (Armstrong II), 1992 OK 79, 848 P.2d 538). Armstrong I has even been cited frequently in Rule 6 disciplinary proceedings involving alcohol abuse. See, e.g., State ex rel. Okla. Bar Ass'n v. Moon, 2012 OK 77, ¶ 35, 295 P.3d 1, 12; State ex rel. Okla. Bar Ass'n v. Burns, 2006 OK 75, ¶¶ 29, 33--34, 145 P.3d 1088, 1094--95; State ex rel. Okla. Bar Ass'n v. Rogers, 2006 OK 54, ¶¶ 11--14, 142 P.3d 428, 433--34; State ex rel. Okla. Bar Ass'n v. Doris, 1999 OK 94, ¶ 43 n.17, 991 P.2d 1014, 1026 n.17. Thus, Armstrong I is a cornerstone in our jurisprudence on bar discipline.
¶12 In Armstrong I, this Court squarely answered whether its review was limited to the type of crime the lawyer was convicted of or was broad enough to allow examination of the underlying facts and circumstances. The Armstrong I Court announced that "the scope of the inquiry" in a Rule 7 proceeding--both prior to the interim order of suspension and prior to the final order of discipline--"includes the particular lawyer's unfitness to practice law and not merely the type of crime the lawyer stands convicted of." Armstrong I, 1990 OK 9, ¶¶ 7--8, 791 P.2d at 818 (emphasis added). The majority's approach of limiting the evidence this Court can consider runs contrary to Armstrong I's holding. They essentially overrule Armstrong I without saying so.
¶13 Faced directly with the issue of whether Rule 7 proceedings should be dismissed if the crime of conviction is a felony DUI, this Court considered whether it should dismiss the case because a felony DUI does not facially demonstrate unfitness to practice law and Rule 7 only permits consideration of the crime of conviction itself, or whether the case could proceed based on additional evidence demonstrating unfitness to practice law. It is nearly the same issue we face in the present case involving a misdemeanor DUI. After a lengthy discussion of numerous amendments to Rule 7.1, the Court held that its 1981 amendment was a "departure" from previous limitations on their review:
¶4 In 1951 this court would exercise its power in a summary disciplinary proceeding and suspend a lawyer's license to practice law when the court was notified that the lawyer had been convicted of a felony. 5 O.S.1951, Ch.1, App., Article 6, Rule 3(8). The Rules were revised in 1958 and the provision remained the same, although renumbered. 5 O.S.Supp.1959, Ch. 1, App. 1, Art. VII, Part 2, § 7.
¶5 Two important changes were made when the Rules were revised in 1966. Discipline was no longer based upon a lawyer's conviction of "a felony" but on "a felony involving moral turpitude", and the lawyer was given the opportunity to show cause why discipline should not be imposed prior to the lawyer's interim suspension. 5 O.S.Supp.1967, Ch. 1, App. 1, Art. IX, § 11. This showing was made to the Bar which then transmitted the record and its recommendation concerning the discipline to the court. Id. See also the pre-suspension procedure described in State ex rel. Oklahoma Bar Associations v. Seelye, 490 P.2d 1095 1096 (Okla. 1971).

¶6 In 1971 the Rule was again changed in two important areas. Discipline was no longer based upon a lawyer's conviction of "a felony involving moral turpitude", but on "a crime involving moral turpitude". 5 O.S.1971, Ch. 1, App. 1, Art. X, § 4(b). The show cause opportunity was no longer made to the Bar but to the court. Id. Art. X at § 4(c). Then in 1977 the opportunity for a pre-suspension showing was changed to an opportunity for a post-suspension showing. 5 O.S.Supp.1977, Ch. 1, App. 1, Art. X, § 4(b). This provision was explained in State ex rel. Oklahoma Bar Association v. Jones, 566 P.2d 130, (Okla. 1977). We said

"[I]n the summary-type disciplinary proceedings authorized by § 4(b) and which are here involved, an important condition precedent must be satisfied. That condition is a member must have been convicted of a crime involving moral turpitude. The charge is constituted by the indictment or information, the judgment and sentence of conviction. These documents are conclusive evidence of the commission of the crime upon which the conviction is based. This alone is sufficient for discipline, coming with the framework of a show cause proceeding. At this point, the burden shifts to the charged member. He may seek a hearing with a right to submit a brief and evidence to explain his conduct or seek mitigations." Id. 566 P.2d at 131. (Emphasis omitted).
The 1981 version of the rules continued to provide for a post-suspension show cause hearing for the convicted lawyer. 5 O.S.1981, Ch. 1, App. 1-A, Rules 7.3 and 7.4. However, the 1981 version no longer provided for summary discipline based upon "a crime involving moral turpitude", but upon conviction of a crime "which demonstrates such lawyer's unfitness to practice law." Id. at Rule 7.1. The 1981 version of Rules 7.1--7.7 is still in effect. 
¶7 This review shows that under the former rules the scope of the court's inquiry was limited to ascertaining whether the lawyer was convicted of "a felony", "a felony involving moral turpitude", or "a crime involving moral turpitude". Facts attendant to a lawyer's conviction were not considered. Whether a lawyer's conviction constituted a crime involving moral turpitude was simply a matter of whether the crime involved such conduct due to the nature of the crime committed. State ex rel. Oklahoma Bar Association v. Jones, supra. Therein we said:
"For the purpose of determining if there has been conviction of a crime involving moral turpitude, we cannot consider surrounding circumstances. In deciding whether moral turpitude is involved, we are limited to the charge contained in the documents permitted in the origination of the summary proceedings of § 4(b)." Id. 566 P.2fd at 132.
Thus, the court imposed an interim suspension based solely on the nature of the crime committed. Generally, the court did not examine the surrounding circumstances of a conviction prior to the interim order of suspension; however, the court would consider such circumstances prior to the final order of discipline. State ex rel. Oklahoma Bar Association v. Simms, 590 P.2d 184, 185 (Okla. 1978). The 1981 version of the Rule suggested departure from this practice.

¶8 The 1981 version allows an interim suspension of a lawyer's license to practice law based on a lawyer's conviction "of a crime which demonstrates such lawyer's unfitness to practice law". We believe the scope of inquiry includes the particular lawyer's unfitness to practice law and not merely the type of crime the lawyer stands convicted of. In the case of Matter of Oliver, 493 N.E.2d 1237 (Ind. 1986), the Supreme Court of Indiana observed the following:
"Commission of some crimes establishes moral turpitude on its face. These include crimes that necessarily involve an intent to defraud, intentional dishonesty for personal gain, or behavior particularly repugnant to accepted moral standards. Commission of other offenses may or may not involve moral turpitude, and thus conviction of other offenses is not grounds for discipline without additional proof of circumstances surrounding the offense." Id. 493 N.E.2d at 1240. 

What the Indiana court said with respect to crimes involving moral turpitude we believe to be applicable to crimes demonstrating a lawyer's unfitness to practice law
. A lawyer's conviction of some crimes will, by itself, demonstrate such lawyer's unfitness to practice law. On the other hand, a lawyer's conviction for some kinds of illegal conduct will not facially demonstrate the lawyer's unfitness to practice law. This principle is recognized in a Comment to Rule 8.4 of the Rules of Professional Conduct. That Comment states in part:
"Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving 'moral turpitude.' That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty or breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation." Comment, 5 O.S.Supp.1988, Ch. 1, App. 3-A, Rule 8.4.
. . . .
¶11 We refer the matter to a trial panel of the Professional Responsibility Tribunal. The issue before the trial panel will be the respondent's "fitness" to practice law.
¶12 The Judgment and Sentence of conviction is conclusive proof of the conviction and no further evidence of such is necessary. The trial panel should receive evidence of whether the respondent's use of alcohol impairs or tends to impair his ability to conduct efficiently and properly the affairs undertaken for a client in the practice of law. See Rule 10.1(c) of the Rules Governing Disciplinary Proceedings. Relevant evidence would include the history of respondent's use of alcohol prior to, during, and after his conviction. Evidence of the respondent's alleged treatment for alcohol abuse and any evidence offered in mitigation by the respondent is also relevant. Relevant evidence might include testimony of the respondent's reputation in the community with respect to his past or present use of alcohol, and whether any such reputation affects his ability to practice law. See, Matter of Oliver, 493 N.E.2d at 1242.
¶13 The Judgment and Sentence of conviction is already of record in this proceeding. The trial panel should consider such conviction in light of the surrounding circumstances, as shown by the evidence before the panel, and recommend whether such conviction demonstrates the respondent's unfitness to practice law. The trial panel shall then file a report with this court in conformity with 5 O.S.1981, Ch. 1, App. 1-A, Rule 6.13.

Armstrong I, 1990 OK 9, ¶¶ 4--8, 11--13, 791 P.2d at 816--819 (footnotes omitted) (emphasis added). Armstrong I's broad interpretation of Rule 7.1's phrase "crime which demonstrates such lawyer's unfitness to practice law" permits us to consider the lawyer's unfitness to practice law in light of the circumstances surrounding the crime, rather than just the type of crime the lawyer stands convicted of. In this case, those underlying circumstances include Respondent's history of alcohol abuse, the impact on his law practice, his reputation, his treatment, and what happened at the time Respondent was arrested for the crime of conviction--i.e., the underlying facts that show his dishonesty in fleeing the scene, his interference with the administration of justice in running from police, and his prior hit-and-run accident showing a pattern of dishonesty and disregard for the law. See id. ¶¶ 8, 12--13, 791 P.2d at 818--19. Armstrong I's holding is not limited to the type of evidence discussed in ¶ 12, as demonstrated by the discussion of Rule 8.4 of the ORPC in ¶ 8; to conclude otherwise would render the exhortation in ¶ 13 to "consider such conviction in light of the surrounding circumstances, as shown by the evidence before the panel" a superfluous repetition of the admonition in ¶ 12.
¶14 Moreover, besides the rule established in Armstrong allowing us to review evidence outside the conviction itself, our other precedents seem to suggest we can always consider all relevant facts. For instance, in the case of In re Stolper, 1939 OK 337, 185 Okla. 459, 94 P.2d 832, this Court noted that, "[a]t the hearing before the board[2] the conviction and sentence was established and evidence was introduced disclosing the circumstances surrounding the conviction." Id. ¶ 2, 185 Okla. at 459, 94 P.2d at 833 (emphasis added). Similarly, in more recent Rule 7 disciplinary cases like State ex rel. Oklahoma Bar Association v. Littlefield, 2023 OK 53, 529 P.3d 185, and State ex rel. Oklahoma Bar Association v. Trenary, 2016 OK 8, 368 P.3d 801, this Court stated its duty is to conduct a "nondeferential, full-scale, de novo examination of all relevant facts"--which necessarily "includ[es] those that mitigate the severity of discipline and those that justify severe sanctions"--because "[a]ttorney discipline cases are decided on a case-by-case basis due to the different circumstances of each case." Littlefield, 2023 OK 53, ¶¶ 4, 12, 529 P.3d at 188--89 (emphasis added) (quoting State ex rel. Okla. Bar Ass'n v. Taylor, 2000 OK 35, ¶ 4, 4 P.3d 1242, 1247); Trenary, 2016 OK 8, ¶ 1, 368 P.3d at 803 (quoting State ex rel. Okla. Bar Ass'n v. Stewart, 2003 OK 13, ¶ 19, 71 P.3d 1, 4). Finally, as an example of how broad the scope of what underlying facts we can consider truly is, in a Rule 7 proceeding involving a "plea of guilty and no contest to the misdemeanor crimes of Public Intoxication, Driving Under the Influence and Leaving Scene of Collision Involving Property Damage," this Court considered evidence of the facts and circumstances surrounding the conviction for public intoxication, including that the lawyer had "told the female bartender, 'I'm going to rape the shit out of you.'" Shahan, 2017 OK 10, ¶ 6, 390 P.3d at 256. Such fact was clearly not necessary to convict someone for the crime of public intoxication; it would be more necessary in a conviction for criminal assault. Nevertheless, the statement was relevant in determining whether the attorney was unfit to practice law.
¶15 In conclusion, Armstrong clearly permits us to consider the underlying facts that demonstrate Respondent's unfitness to practice law from the arrest that led to his conviction. Here, we should be able to consider all the evidence the Bar has proffered concerning Respondent's conduct that might tend to prove dishonesty, serious interference with the administration of justice, and a pattern of offenses that demonstrates a disrespect for the law.

B. Nothing in the RGDP Prevents This Court from Considering the Underlying Facts and Circumstances of an Arrest that Leads to Conviction
¶16 A review of the applicable Rules Governing Disciplinary Proceedings leads me to the same conclusion. Faced with the plain language of Armstrong I, the majority must invoke other authority to prevent this Court from considering anything other than the crime the lawyer has been convicted of. The majority discusses the differences between Rule 6 and Rule 7 disciplinary proceedings, suggesting that any surrounding facts beyond those that support the conviction itself can only be considered if Rule 6 charges are filed on top of the Rule 7 charge. See Majority Op. ¶¶ 17, 22. In its discussion, the majority diminishes language in Rule 7.2 and invokes provisions from Rule 6.2, Rule 7.5, and Rule 7.6 that are irrelevant to the case at hand. See id. ¶¶ 15 & n.21, 17 & nn.25--26. Finally, the majority suggests that this Court's consideration of surrounding facts and circumstances would essentially constitute the institution of new charges of professional misconduct that the Bar has not sought to bring through a Rule 6 proceeding, which would transgress constitutional due process safeguards that prohibit us from serving as both judge and prosecutor, invoking language from In re Reinstatement of Fraley, 2005 OK 39, 115 P.3d 842, and from Tweedy v. Oklahoma Bar Association, 1981 OK 12, 624 P.2d 1049. Id. ¶ 19.
¶17 Rule 7.2 of the RGDP only affords General Counsel for the Bar five days to transmit certified copies of court filings related to a lawyer's conviction to the Chief Justice. Rule 7.2, RGDP, 5 O.S.Supp.2020, ch. 1, app. 1-A. Despite that short window, the Bar knew what it had to plead to make this misdemeanor DUI worthy of our review under Rule 7.1 of the RGDP, Armstrong I, and Rule 8.4 of the ORPC. Consequently, in their initiating Notice of Judgment and Sentence, the Bar alleged: (1) that Respondent was convicted of "Driving Under the Influence (a misdemeanor) pursuant to 47 O.S. § 11-902"; (2) that, "[a]fter the collision, Respondent abandoned his vehicle, took off running, and left the scene"; and (3) that "Respondent did not respond when [a] police officer ordered him to stop." Notice of J. & Sentence 2, Apr. 5, 2023. Furthermore, the Bar attached the criminal Information, including a Probable Cause Affidavit attached as an exhibit thereto, to their Notice of Judgment and Sentence as required by Rule 7.2. Rule 7.2, RGDP, 5 O.S.Supp.2020, ch. 1, app. 1-A (requiring transmission of "certified copies of the Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and judgment and sentence of conviction" (emphasis added)). Those documents fully disclose the underlying facts and circumstances that gave rise to Respondent's arrest and ultimate conviction for misdemeanor DUI, including the facts that he fled the scene of an injury accident and attempted to evade police.[3] Had the Bar been given more than five days, they no doubt would have included allegations of the prior hit-and-run accident in their Notice of Judgment and Sentence. In their very next filing, which was a Reply concerning interim immediate suspension, the Bar stated that "[s]hortly after Complainant filed the Notice of Judgment and Sentence in this case, the Office of the General Counsel learned that there was a previous incident in Oklahoma City in April of 2015 involving Respondent wherein he left the scene of a collision he caused without proper notice." Compl't's Reply to Resp't's Statement in Resp. to Show Cause Order 4, May 4, 2023. All along, the Bar has fully disclosed what evidence it intends to proffer in support of a finding of unfitness, and Respondent has been given an opportunity to respond--even being granted leave to file a surreply to address allegations related to the prior hit-and-run accident, see Resp't's Appl. to File Sur-Reply 1, May 12, 2023 (seeking leave "to address Complainant's reference to and reliance upon a prior motor vehicle incident involving Respondent, which occurred in April of 2015"); Order 1, May 15, 2023 (granting leave).
¶18 All this goes to show, first, that the Bar has been acting as prosecutor, not this Court. The Bar gave notice of its evidence in reliance upon Rule 7.2 of the RGDP, Armstrong I, and Rule 8.4 of the ORPC. My desire to consider the Bar's evidence does not result, either directly or obliquely, in the institution of new charges. I am not transgressing constitutional due process safeguards. Respondent has been given notice of the evidence against him and an opportunity to respond, of which he has taken full advantage.
¶19 Second, nothing in Rule 7.2 prevents this Court from considering the underlying facts and circumstances that give rise to Respondent's ultimate conviction for misdemeanor DUI. Rule 7.2 says:

Sec. 7.2. Transmittal of record relating to conviction
The clerk of any court within this State in which a lawyer is convicted or as to whom proceedings are deferred shall transmit certified copies of the Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and judgment and sentence of conviction to the Chief Justice of the Supreme Court and to the General Counsel of the Oklahoma Bar Association within five (5) days after said conviction. The documents shall also be furnished to the Chief Justice by the General Counsel within five (5) days of receiving such documents. Such documents, whether from this jurisdiction or any other jurisdiction shall constitute the charge and be conclusive evidence of the commission of the crime upon which the judgment and sentence is based and shall suffice as the basis for discipline in accordance with these rules.

See State ex rel. Okla. Bar Ass'n v. Zannotti
, 2014 OK 25, ¶ 22, 330 P.3d 11, 16.

Rule 7.2, RGDP, 5 O.S.Supp.2020, ch. 1, app. 1-A (emphasis added). As I read that rule, it states that all of the documents listed in the first sentence "shall constitute the charge" being brought by the Bar and "shall suffice as the basis for discipline in accordance with these rules" and shall "be conclusive evidence of [only] the commission of the crime upon which the judgment and sentence is based." The phrase "[s]uch documents" points back to all of the antecedent documents, including the "indictment or information." The majority fails to give any real meaning to this operative language in Rule 7.2 about what "constitute[s] the charge" in a Rule 7 proceeding. Moreover, the majority reads the phrases from Rule 7.2 in a way that ignores the import of Armstrong's interpretation of Rule 7.1. Under my reading of Rule 7.2 in its entirety, the surrounding facts and circumstances that appear in the indictment or information are part of what "constitute[s] the charge" and part of what can "suffice as the basis for discipline"--even if such surrounding facts and circumstances eventually prove to be most relevant to criminal charges that do not end up serving as the basis for the judgment and sentence. At that juncture, such surrounding facts and circumstances must still be proved by clear and convincing evidence, see supra ¶ 4, as only "the commission of the crime upon which judgment and sentence is based" has been proven by "conclusive evidence" under the dictates of Rule 7.2.
¶20 Rule 7.5 of the RGDP offers no help for the majority's position. The majority wishes to characterize charges dismissed pursuant to a plea deal as equivalent to the reversal of a conviction on appeal. Majority Op. ¶ 17 & nn.25--26. In the event of a conviction's reversal upon appeal, "disciplinary proceedings based upon such conviction shall be dismissed immediately" pursuant to Rule 7.5. By extension, the majority argues that we shouldn't be considering charges dismissed pursuant to a plea deal. Rule 7.5 does not come to bear at all in this proceeding because there is still a conviction, i.e., the conviction for misdemeanor DUI. Nothing about Rule 7.5 informs our decision regarding whether the facts and circumstances surrounding that conviction may or may not be considered. Rule 7.5 is wholly inapposite.
¶21 Similarly, Rule 7.6 of the RGDP is of no avail to the majority's position. The majority would suggest that Rule 7.6 serves as the basis for the Bar to investigate and bring Rule 6 charges against Respondent relating to him fleeing the scene of an injury accident and attempting to evade police. But the very terms of Rule 7.6 suggest otherwise. Rule 7.6 only comes to bear prior to final disposition of a criminal action that could serve as the basis for Rule 7 disciplinary proceedings. That's why the rule permits the Professional Responsibility Commission (PRC) to "initiat[e] and conduct[] disciplinary proceedings upon charges identical to those set forth in a criminal complaint, indictment, or information, notwithstanding the pendency or [the eventual] final disposition of the criminal action."[4] Rule 7.6, RGDP, 5 O.S.2011, ch. 1, app. 1-A. This proceeding was instituted after Respondent's conviction. Thus, Rule 7.6 has no bearing here. Furthermore, Rule 7.6 does not inform our decision regarding whether the facts and circumstances surrounding Respondent's conviction may or may not be considered.
¶22 Finally, nothing in Rule 6.2 of the RGDP prevents this Court from considering evidence about the prior hit-and-run accident. The majority points to Rule 6.2 to suggest that the Bar should have included allegations concerning the prior hit-and-run accident in its Notice of Judgment and Sentence. Majority Op. ¶ 15. Rule 6.2 provides that the complaint approved by the PRC for filing in a Rule 6 proceedings "shall set forth the specific facts constituting the alleged misconduct, and if prior conduct resulting in discipline, or evidence from prior investigations, is relied upon to enhance discipline, the prior acts or conduct relied upon shall be set forth." Rule 6.2, RGDP, 5 O.S.2011, ch. 1, app. 1-A (emphasis added). Nothing in this rule governs the content of a Notice of Judgment and Sentence filed pursuant to Rule 7.2. Moreover, the rule only governs what steps the Bar must take if it wishes to rely upon "prior conduct resulting in discipline[] or evidence from prior investigations." Thus, by its terms, Rule 6.2 would not govern the use of evidence from a current or ongoing investigation. Nor would Rule 6.2 govern the use of any prior conduct for purposes of proving "unfitness to practice law" under Rule 7.1, because Rule 6.2 only governs the use of prior conduct for "enhanc[ing] discipline." Lastly, the ultimate concern of Rule 6.2 is the lawyer's due process rights of notice and an opportunity to be heard, both of which have already been guaranteed in this proceeding. See supra ¶ 18.
¶23 In conclusion, the majority has failed to point out any rule in the RGDP that prohibits this Court from considering the facts and circumstances surrounding Respondent's criminal conviction in keeping with Armstrong I, Rule 7.2 of the RGDP, and Rule 8.4 of the ORPC.

II. Evidence of the Prior Hit-and-Run Collision Is Admissible
¶24 My second disagreement with the majority's ruling concerns their decision to sustain Respondent's objection to the Bar's proffered evidence of a prior hit-and-run accident from 2015. Majority Op. ¶ 13. As the majority notes, the Bar has urged this Court to consider such evidence--including testimony from the other driver stating that he "believed Respondent had been drinking or was under the influence at the time of the accident. as a "pattern of behavior." Id. ¶ 20.
¶25 In my opinion, such evidence demonstrates "[a] pattern of repeated offenses . . . [that] indicate indifference to legal obligation" and therefore constitute unfitness to practice law. Rule 8.4, ORPC, 5 O.S.2011, ch. 1, app. 3-A. Rule 1.3 of the RGDP permits disciplinary action for "any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, . . . whether or not the act is a felony or misdemeanor, or a crime at all." Rule 1.3, RGDP, 5 O.S.2011, ch. 1, app. 1-A (emphasis added). Thus, evidence of the prior hit-and-run motor vehicle accident is relevant and admissible during the Bar's case-in-chief for both the PRT and this Court to weigh in light of the clear-and-convincing burden of proof that applies in all bar disciplinary cases--even Rule 7 disciplinary cases. See supra ¶ 4. That's the conclusion reached by the three-member Trial Panel of the PRT--which consisted of two former district judges and a lay member. See Tr. of Hr'g vol. 1, 158:11--:15, Dec. 5, 2023. I disagree with the majority's conclusion that such evidence is only relevant in a Rule 6 proceeding and is "not relevant to this Rule 7 proceeding." Majority Op. ¶ 22. As discussed above, the Bar gave Respondent notice of its intent to use evidence of the prior hit-and-run accident early on, and the Respondent was afforded an opportunity to respond both in pretrial briefing and at the PRT hearing, thereby alleviating any concerns about due process. See supra ¶¶ 17--18.
¶26 But even if we assume that admission of this evidence in the Bar's case-in-chief was error, such error became harmless insofar as this evidence was admissible for purposes of impeachment. Both Respondent's physician and his four mitigation witnesses testified that Respondent's actions and behavior were "irregular" because of a concussion and "out of character." Majority Op. ¶¶ 7, 12. The prior hit-and-run accident demonstrates that--whether we're talking about Respondent's propensity for consuming alcohol or for running from the scene of an accident--his actions and behavior were not out of character. See Tr. of Hr'g vol. 1, 153:25--154:8, Dec. 5, 2023 (wherein the Bar's attorney argues against Respondent's objection as follows: "There was reference made in Respondent's pleadings that this is a one-off thing, the 2021 accident is a one-off thing, and our investigation revealed that that wasn't true, and so we are presenting that evidence to show that in all of the accidents that we have found involving Mr. Bethea, he has run from the scene or at least, you know, not followed his legal obligations and not stayed at the scene when he was supposed to."). Somehow, the majority misses this point, erroneously stating that "[t]he Bar introduced no evidence to dispute the evidence that Respondent's actions were out of character for him." See id. at ¶ 11. Clearly, the Bar's evidence of the prior hit-and-run accident disputes that point.

III. Conclusion
¶27 A prosecutor found probable cause to charge Respondent with the felony of Leaving the Scene of an Accident with Person Injury and the misdemeanor of Causing an Accident Resulting in Personal Injury while Driving Under the Influence. The simple fact that Respondent was able to negotiate a plea which provides for only a misdemeanor DUI conviction and no felony conviction does not erase the facts underlying his misconduct. Rule 7.2 of the RGDP, Rule 8.4 of the ORPC, and Armstrong I permit this Court to consider all of Respondent's misconduct proved by clear and convincing evidence in this Rule 7 proceeding.
¶28 Moreover, aside from the underlying conduct, this Court has been presented with additional information demonstrating Respondent's unfitness to practice law. The two former district judges and lay member on the PRT's Trial Panel unanimously found that "Respondent was not fully forthcoming, candid, or accurate regarding either the 2015 or the 2021 accidents, particularly in his testimony about leaving those accidents"; that he "has not taken full responsibility for his conduct"; and that such concerns coupled with "Respondent's decision to continue to drink alcohol" make it impossible to advise this Court whether his "present consumption of alcohol does or does not impair his ability to practice law." For these reasons, I would make the one-year suspension commence on the date this opinion issues, with no credit for time served under the interim suspension.

FOOTNOTES
[1] Although Respondent was initially charged in the underlying criminal case with Causing an Accident Resulting in Personal Injury while Driving Under the Influence--a crime which would subject him to a punishment "by imprisonment in the county jail for not less than ninety (90) days nor more than one (1) year, and a fine of not more than Two Thousand Five Hundred Dollars ($2,500.00)," § 11-904(A)(1)--the prosecutor amended that charge as part of Respondent's plea deal to Driving Under the Influence--a crime which would only subject him to a punishment "by imprisonment in jail for not less than ten (10) days nor more than one (1) year, and . . . [a] fine[] [of] not more than One Thousand Dollars ($1,000.00)," § 11-902(C)(1)(b)--(c). Respondent pled guilty to the latter crime.
[2] When the opinion for In re Stolper was handed down in September of 1939, the Board of Governors of the State Bar conducted hearings in bar disciplinary proceedings and possessed "power, after a hearing, . . . to disbar members or to discipline them by reproval, public or private, or by suspension from practice," O.S.1931, § 4235, subject to review by the Oklahoma Supreme Court, id. § 4246.
[3] Based on the evidence produced at the PRT hearing, the Trial Panel made factual findings that "Respondent drove under the influence of alcohol and hit two cars head-on after he crossed the roadway's center line into opposing traffic"; that he "injured six people, three of whom were children"; that he "walked away from the accident and the injured with his keys and wallet in his pockets" and "did not check on or offer aid to any of the injured adults or children" or even "provide his name or contact or insurance information to anyone or tell anyone where he was going." Such evidence--even though it may be surrounding facts and circumstances of a criminal charge that did not lead to conviction--seems highly relevant in our consideration of whether Respondent's actions in attempting to flee the scene and in running from the police demonstrate dishonesty and serious interference with the administration of justice. See State, ex rel. Oklahoma Bar Ass'n v. Hart, 2014 OK 96, ¶ 11, 339 P.3d 895, 899 ("Hart's plea to the felonious charge of eluding police is an act of direct defiance of his oath to uphold and protect the Oklahoma Constitution. We conclude Hart's plea to the felony charge of eluding an officer was a violation of the ORPC."); State ex rel. Oklahoma Bar Ass'n v. Rogers, 2006 OK 54, ¶ 14, 142 P.3d 428, 434--35 ("[W]e find that under the circumstances of this case, Respondent's conviction for leaving the scene of a motor vehicle accident with property damage, which he caused due to his driving while intoxicated, constitutes clear and convincing evidence of conduct involving dishonesty for which discipline is warranted pursuant to Rule 8.4(c)."); State v. Horton, 248 S.E.2d 263, 263--64 (S.C. 1978) ("One who leaves the scene of an accident is fraudulently attempting to relieve himself of any liability. We conclude the offense of 'hit and run' is contrary to justice, honesty and good morals.").
[4] Once final disposition of the criminal action has occurred, Zannotti instructs that the PRC and General Counsel for the Bar cannot ignore their duties under Rule 7.2 to transmit the documents showing conviction. Zannotti, 2014 OK 25, ¶¶ 20--22, 330 P.3d 11, 16.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1939 OK 337, 94 P.2d 832, 185 Okla. 459, 
In re STOLPER
Discussed at Length

 
1990 OK 9, 791 P.2d 815, 
State ex rel. Oklahoma Bar Ass'n v. Armstrong
Discussed at Length

 
1992 OK 79, 848 P.2d 538, 
State ex rel. Oklahoma Bar Ass'n v. Armstrong
Discussed at Length

 
2001 OK 69, 37 P.3d 763, 72 OBJ 2604, 
STATE EX. REL. OKLAHOMA BAR ASSN. v. MINTER
Discussed

 
1971 OK 133, 490 P.2d 1095, 
State ex. rel. Oklahoma Bar Ass'n' v. SEELYE
Cited

 
2002 OK 84, 60 P.3d 1024, 
STATE ex. rel. OKLAHOMA BAR ASS'N v. SHOFNER
Discussed

 
2003 OK 13, 71 P.3d 1, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. STEWART
Discussed at Length

 
2005 OK 39, 115 P.3d 842, 
IN THE MATTER OF THE REINSTATEMENT OF FRALEY
Discussed at Length

 
2006 OK 54, 142 P.3d 428, 
STATE ex rel.OKLAHOMA BAR ASSOCIATION v. ROGERS
Discussed at Length

 
2006 OK 75, 145 P.3d 1088, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BURNS
Discussed

 
2007 OK 91, 175 P.3d 379, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MCBRIDE
Discussed

 
2012 OK 29, 275 P.3d 133, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. CONRADY
Discussed

 
2012 OK 77, 295 P.3d 1, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MOON
Discussed

 
2013 OK 42, 304 P.3d 453, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. COOLEY
Discussed at Length

 
2013 OK 92, 311 P.3d 846, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. CLAYBORNE
Discussed

 
2014 OK 20, 323 P.3d 222, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BERNHARDT
Discussed at Length

 
2014 OK 25, 330 P.3d 11, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ZANNOTTI
Discussed at Length

 
2014 OK 96, 339 P.3d 895, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HART
Discussed at Length

 
1977 OK 118, 566 P.2d 130, 
STATE EX REL. OKLAHOMA BAR ASS'N v. JONES
Discussed at Length

 
2016 OK 8, 368 P.3d 801, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. TRENARY
Discussed at Length

 
2016 OK 19, 368 P.3d 810, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SMITH
Discussed

 
1978 OK 153, 590 P.2d 184, 
STATE EX REL. OKL. BAR ASS'N v. SIMMS
Cited

 
2017 OK 10, 390 P.3d 254, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SHAHAN
Discussed at Length

 
2017 OK 26, 393 P.3d 219, 
STATE EX. REL. OKLAHOMA BAR ASSOCIATION v. MCMILLEN
Discussed

 
2017 OK 28, 394 P.3d 216, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HUNT
Discussed

 
2019 OK 81, 455 P.3d 903, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ELSEY
Discussed

 
2021 OK 6, 481 P.3d 250, 
WAREHOUSE MARKET v. STATE ex rel. OKLAHOMA TAX COMM.
Discussed

 
1999 OK 94, 991 P.2d 1015, 70 OBJ 3622, 
State ex. rel. Oklahoma Bar Association v. Doris
Cited

 
2021 OK 46, 496 P.3d 612, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. FAULK
Discussed

 
2021 OK 61, 500 P.3d 619, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MCBRIDE
Discussed at Length

 
2000 OK 35, 4 P.3d 1242, 71 OBJ 1163, 
State ex. rel. Oklahoma Bar Assn. v. Taylor
Discussed

 
2023 OK 1, 523 P.3d 1106, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WRIGHT
Discussed

 
2023 OK 53, 529 P.3d 185, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. LITTLEFIELD
Discussed at Length

 
2023 OK 79, 531 P.3d 1276, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MCCOY
Discussed

 
2023 OK 98, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. LANCE
Discussed

 
2023 OK 110, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. LOCKARD
Cited

 
1981 OK 12, 624 P.2d 1049, 
Tweedy v. Oklahoma Bar Ass'n
Discussed at Length

Title 47. Motor Vehicles

 
Cite
Name
Level

 
47 O.S. 11-902, 
Persons Under the Influence of Alcohol or Other Intoxicating Substance or Combination Thereof
Discussed at Length

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA